THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LARRY PONDEXTER, Defendant-Appellant.

Fourth District   No. 4—90—0269

Opinion filed June 5, 1991.

Daniel D. Yuhas and Peter L. Rotskoff, both of State Appellate Defender's Office, of Springfield, for appellant.

Donald D. Bernardi, State's Attorney, of Pontiac (Kenneth R. Boyle, Robert J. Biderman, and Rebecca L. White, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McCULLOUGH delivered the opinion of the court:

Defendant was indicted by a grand jury on March 7, 1989, for two counts of aggravated battery (Ill. Rev. Stat. 1987, ch. 38, par. 12—4(b)(6)). After the jury was impaneled and sworn and the State had rested its case, the trial court declared a mistrial. Defendant subsequently filed a motion to bar reprosecution on double jeopardy grounds, which was denied by the trial court. Defendant appeals pursuant to Supreme Court Rule 604(f) (134 Ill. 2d R. 604(f)). We reverse the trial court and hold double jeopardy bars a second trial.

Defendant is an inmate at the Pontiac Correctional Center and on January 11, 1989, was involved in a fight with an on-duty correctional officer. According to defendant, the correctional officer slammed the cell-house door on his hand and refused to open the door so defendant could release his hand. The correctional officer denied this incident and testified defendant attacked him for no reason whatsoever. The correctional officer received cuts and abrasions on his head and face. Defendant claims to have suffered a broken finger, although this was never proved.

Defendant's trial began on March 22, 1990, with defendant appearing *pro se*. Pretrial motions were heard on the two days preceding the trial date. On two occasions, the trial court specifically asked defendant whether he wished to have any witnesses subpoenaed. Defendant stated he did not have any specific names of people he wished to call as witnesses.

The jury was selected and sworn and the State made its opening statement. Defendant did not give an opening statement. The State proceeded with its case in chief, calling three witnesses, all correctional officers on duty that day. Thereafter, the State rested.

The proceedings began the following day for defendant's case in chief. It was at this point in the proceedings that defendant produced an affidavit from another inmate who claimed to have witnessed the altercation between defendant and the correctional officer. This affidavit was dated February 6, 1989, more than one year prior to trial, but defendant claimed he had forgotten about it until the previous evening when he found it in his files. Defendant requested this witness be called on his behalf.

At this point, the State's Attorney indicated this affidavit had not been provided in discovery. The court noted the dilemma it faced in that this affidavit was essentially a witness statement that was required to be produced to the State per the discovery rules. Yet, the court observed that, taken at face value, the affidavit was from a person claiming to be an eyewitness to the entire episode who would have material things to say about the incident. The court first indicated its intention to declare a mistrial to straighten out the discovery situation. The court believed this affidavit should have been disclosed to the State but was hesitant to exclude it because it was a material statement as to what occurred. The trial court then sought the State's position on a mistrial.

The State's Attorney objected to the mistrial because he did not know what effect it would have in terms of double jeopardy and retrying the defendant. Defendant stated he did not know what to say

about the mistrial. However, defendant indicated he did wish this witness to be called.

The court explained to defendant that if a mistrial was declared, this would not be done at the State's jeopardy, but rather to allow defendant to call the witness who had not been previously disclosed to the State. In the trial court's statement of its intention to declare a mistrial, it indicated a continuance in the situation would not be sufficient to remedy the problem.

The trial court then declared a mistrial because it failed to see any other way defendant could call the witness when the State had not been informed of this individual. The court indicated to defendant it could refuse to allow the witness to testify but, because of its belief that this would be fundamentally unfair to the process of trying to find out what happened on January 11, 1989, it declined to do this. Thus, the trial court declared a mistrial but explicitly noted the State should not be prejudiced by this declaration.

Defendant filed a motion to bar reprosecution based on double jeopardy grounds. After a hearing on the matter, this motion was denied. The court stated it would have been manifestly detrimental to the ends of justice to have not declared a mistrial. The court indicated the mistrial was declared on the court's motion and that neither defendant nor the State's Attorney requested this mistrial. Defendant appeals the denial of that motion pursuant to Supreme Court Rule 604(f), which provides: "The defendant may appeal to the Appellate Court the denial of a motion to dismiss a criminal proceeding on grounds of former jeopardy." 134 Ill. 2d R. 604(f).

We initially note that reviewing courts should not have procedures and rules for trial courts which apply only to defendants such as Pondexter. A separate standard would only lend encouragement to make a mockery of our judicial system.

Defendant contends his reprosecution is barred by the double jeopardy clause because neither party requested the mistrial and no "manifest necessity" existed to declare a mistrial. Defendant suggests there were less drastic alternatives available to remedy the discovery violation and, thus, a mistrial was unnecessary. The State responds that manifest necessity existed to declare the mistrial. The State asserts the dilemma faced by the court with respect to defendant's potential witness was caused by defendant's own conduct and, since the mistrial benefitted defendant, reprosecution should not be barred.

The double jeopardy clause of the fifth amendment of the United States Constitution, made applicable to the States through the fourteenth amendment in *Benton v. Maryland* (1969), 395 U.S. 784, 787,

23 L. Ed. 2d 707, 711, 89 S. Ct. 2056, 2058, provides "nor shall any person be subject for the same offen[s]e to be twice put in jeopardy of life or limb." (U.S. Const., amend. V.) This clause safeguards a criminal defendant's "valued right to have his trial completed by a particular tribunal" but must be balanced against "the public's interest in fair trials designed to end in just judgments." (*Wade v. Hunter* (1949), 336 U.S. 684, 689, 93 L. Ed. 974, 978, 69 S. Ct. 834, 837.) The double jeopardy clause does not bar all reprosecutions. Whether a defendant may be retried after a mistrial has been declared without the defendant's request depends on whether there was a manifest necessity for the mistrial. *People ex rel. Roberts v. Orenic* (1981), 88 Ill. 2d 502, 431 N.E.2d 353.

■ The starting point in any double jeopardy analysis is determining whether jeopardy had attached. Jeopardy attaches when a jury is selected and sworn. (*People ex rel. Mosley v. Carey* (1979), 74 Ill. 2d 527, 387 N.E.2d 325.) It is unquestionable that jeopardy had attached in the present case. Not only had the jury been selected and sworn, but the State had presented and rested its case. Thus, where neither party requested a mistrial, was the discovery violation in this case sufficient to establish a manifest necessity to declare a mistrial? We think not.

In *United States v. Perez* (1824), 22 U.S. (9 Wheat.) 579, 6 L. Ed. 165, the Supreme Court first held the double jeopardy clause did not bar reprosecution where a jury trial ended because of jury deadlock. In formulating the standard to determine whether double jeopardy bars a subsequent prosecution, the Court stated:

> "We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes ***." (*Perez*, 22 U.S. (9 Wheat.) at 580, 6 L. Ed. at 165.)

Manifest necessity "stands as a command to trial judges not to foreclose the defendant's option until a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings." *United States v.*

*Jorn* (1971), 400 U.S. 470, 485, 27 L. Ed. 2d 543, 557, 91 S. Ct. 547, 557.

The *Perez* formulation, consistently adhered to by the Supreme Court, "abjures the application of any mechanical formula by which to judge the propriety of declaring a mistrial in the varying and often unique situations arising during the course of a criminal trial." (*Illinois v. Somerville* (1973), 410 U.S. 458, 462, 35 L. Ed. 2d 425, 429, 93 S. Ct. 1066, 1069.) The trial court must always temper the decision whether to abort the trial by considering the importance to the defendant of being able, once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate. (*Jorn*, 400 U.S. at 486, 27 L. Ed. 2d at 557, 91 S. Ct. at 558.) The trial court must carefully consider all of the circumstances and any reasonable alternatives to a declaration of a mistrial. (*Jorn*, 400 U.S. at 487, 27 L. Ed. 2d at 558, 91 S. Ct. at 558.) A trial court must not act irrationally or irresponsibly (*Arizona v. Washington* (1978), 434 U.S. 497, 514, 54 L. Ed. 2d 717, 734, 98 S. Ct. 824, 835), but must use "sound discretion" to assure that manifest necessity exists to declare *sua sponte* a mistrial. *Jorn*, 400 U.S. at 487, 27 L. Ed. 2d at 558, 91 S. Ct. at 558.

The classic example of "manifest necessity" is a hung jury. Since the jury has neither convicted nor acquitted, the defendant's right to have his trial completed by a particular tribunal is not infringed. (*Perez*, 22 U.S. (9 Wheat.) at 580, 6 L. Ed. at 165.) Juror bias is another example of manifest necessity. (*Simmons v. United States* (1891), 142 U.S. 148, 35 L. Ed. 968, 12 S. Ct. 171.) Where a jury was discharged because one juror served on the grand jury which indicted the defendant, retrial was not barred because manifest necessity existed. *Thompson v. United States* (1894), 155 U.S. 271, 39 L. Ed. 146, 15 S. Ct. 73.

Defendant argues the trial court abused its discretion in granting a mistrial for what amounts to a discovery violation. The trial court briefly considered a continuance as an alternative to the mistrial. The court stated, "This is not a matter that simply a short continuance would solve the problem, have just a brief interruption and everybody could find out what he [the potential witness] had to say and produce him over here and see whether he wants to testify." The court expressed a concern whether this potential witness could be located quickly enough to see whether in fact he wished to testify.

Supreme Court Rule 415(g)(i) provides:

"If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to

comply with an applicable discovery rule or an order issued pursuant thereto, the court may order such party to permit the discovery of material and information not previously disclosed, grant a continuance, exclude such evidence, or enter such other order as it deems just under the circumstances." 134 Ill. 2d R. 415(g)(i).

■ The correct sanction to be applied for violation of a discovery rule is a matter for the trial court's discretion, and the judgment of the trial court is given great weight. (*People v. Morgan* (1986), 112 Ill. 2d 111, 492 N.E.2d 1303.) The preferred sanction for a discovery violation where the violation is not blatant is a recess or continuance if the granting thereof would be effective to protect the other party from surprise or prejudice. (*People v. Carrasquillo* (1988), 174 Ill. App. 3d 1023, 529 N.E.2d 603.) Courts have held that ordering a mistrial for a discovery violation is not an appropriate sanction. (*Morgan*, 112 Ill. 2d 111, 492 N.E.2d 1303; *People v. Peters* (1986), 144 Ill. App. 3d 310, 494 N.E.2d 853; *People v. Loggins* (1985), 134 Ill. App. 3d 684, 480 N.E.2d 1293.) *Morgan, Peters,* and *Loggins* involved discovery violations by the prosecutor. Sanctions are designed to accomplish the purpose of discovery, but it is clear the imposition of sanctions should not encroach on a fair trial. *People v. Spicer* (1987), 158 Ill. App. 3d 699, 511 N.E.2d 235.

In *Carrasquillo*, defendant violated the discovery rules. The trial court barred the subject testimony. The appellate court, in reversing the trial court, stated:

"Although Rule 415(g) gives trial courts wide latitude in imposing sanctions, the one preferred for a discovery violation in a case such as the one at bar is a recess or continuation, if the granting thereof would be effective to protect the other party from prejudice or surprise." *Carrasquillo,* 174 Ill. App. 3d at 1032, 529 N.E.2d at 609.

This court in *Spicer*, wherein defendant did not provide the State with information regarding a voluntary intoxication defense until the State already presented five witnesses, approved the trial court's actions in excluding any substantive evidence of the defense.

In *Taylor v. Illinois* (1988), 484 U.S. 400, 415, 98 L. Ed. 2d 798, 814, 108 S. Ct. 646, 655-56, the Supreme Court stated:

"A trial judge may certainly insist on an explanation for a party's failure to comply with a request to identify his or her witnesses in advance of trial. If that explanation reveals that the omission was willful and motivated by a desire to obtain a tactical advantage that would minimize the effectiveness of

cross-examination and the ability to adduce rebuttal evidence, it would be entirely consistent with the purposes of the Compulsory Process Clause simply to exclude the witness' testimony."

Here, the trial court stated it only had two alternatives to remedy this discovery violation: declare a mistrial to allow defendant to call the witness, or bar the testimony. Although the court briefly considered granting a continuance, it ultimately determined a continuance was infeasible at that point in the trial. The State objected to allowing the witness to testify on the grounds of surprise and the discovery violation. The State, however, did not request a continuance to allow it to speak to the witness.

Essentially, the State objected to the witness corroborating defendant's self-defense theory. But, both the State's Attorney and the court were aware of defendant's intention to claim self-defense. Several references were previously made by both parties as well as the court to indicate defendant's intent to use this defense. In fact, defendant's discovery answer stated his intent to rely on self-defense. Moreover, the prosecution asked its first witness, Officer Moore, who was involved in the fight, whether he had done anything to provoke the altercation. The officer replied negatively, which demonstrates the State's attempt to refute defendant's self-defense claim. Therefore, it is unlikely that the State would have conducted its prosecution differently had it known of this witness prior to the beginning of the trial.

■ The State argues defendant knew of the witness for some time and wilfully failed to disclose the same. The defendant argues that locating the witness would not be a problem as his cell number was known to the defendant as well as to the court. Mistrial is a drastic sanction and it must be "used with the greatest caution, under urgent circumstances, and for very plain and obvious causes." (*Perez*, 22 U.S. (9 Wheat.) at 580, 6 L. Ed. at 165.) When a trial court, acting without defendant's consent, aborts the proceeding, the defendant has been deprived of his valued right to have his trial completed by a particular tribunal. *People v. Ruiz* (1979), 78 Ill. App. 3d 326, 330, 396 N.E.2d 1314, 1318.

Following *Taylor, Spicer*, and *Carrasquillo*, as well as the provisions of Supreme Court Rule 415(g)(i), the trial court had sanctions available short of declaring a mistrial. Under the facts of this case, the order for mistrial was error.

Although neither party raises the issue, we must address the circumstances leading up to the declaration of the mistrial, which may have been a factor in the trial court's decision. Initially, in his first appearance in court, the public defender was appointed to represent

defendant. Subsequently, the public defender withdrew from the case and new counsel was appointed to represent defendant. However, two days before the trial began, that attorney also withdrew from the case. Thereafter, having found the defendant capable of representing himself, the court told defendant no more attorneys would be appointed to represent him. Defendant could either hire private counsel or proceed *pro se.*

Despite being represented by counsel at all court appearances before trial, defendant filed approximately 10 *pro se* motions. These motions varied from requests for supplemental discovery to a request to be released from shackles at trial. Only one of these motions raised an issue as to defendant's dissatisfaction with his attorney. The rest of these motions addressed various procedural aspects of the case. The court entertained these motions and, on more than one occasion, held extensive hearings. This, in part, caused defendant's trial to be delayed for more than 1½ years.

An accused has either the right to have counsel represent him or the right to represent himself; however, a defendant has no right to both self-representation and the assistance of counsel. An election between these two rights must be made at the proper time and in the proper manner. (*People v. Williams* (1983), 97 Ill. 2d 252, 267, 454 N.E.2d 220, 226-27, citing *People v. Ephraim* (1952), 411 Ill. 118, 122, 103 N.E.2d 363, 365.) It is obvious that both of these rights cannot be exercised at the same time. *Williams,* 97 Ill. 2d at 267, 454 N.E.2d at 226, citing *United States v. Mitchell* (2d Cir. 1943), 137 F.2d 1006.

Once this election is made, the roles of attorney and client are defined. Defendant retains the right to make decisions involving "fundamental rights," while those strategic matters involving "the superior ability of counsel" are left to the attorney. (*People v. Campbell* (1984), 129 Ill. App. 3d 819, 473 N.E.2d 129.) Decisions involving "fundamental rights" include the decision whether to plead guilty or not guilty, whether to waive jury trial, whether to testify, and whether to appeal. (*Campbell,* 129 Ill. App. 3d at 821, 473 N.E.2d at 131.) On the other hand, if a defendant retains counsel, that counsel has control over the day-to-day conduct of the defense. He has the responsibility to determine when and whether to object, what witnesses to call and what defenses to develop. These decisions, practically speaking, must be done without consulting the client. *Wainwright v. Sykes* (1977), 433 U.S. 72, 91, 53 L. Ed. 2d 594, 611, 97 S. Ct. 2497, 2509 (Burger, C.J., concurring).

The court had no responsibility to entertain defendant's *pro se* motions during the time he was represented by counsel. His counsel

was competent and the majority of defendant's motions involved "strategic matters" which were better left to the "superior ability of counsel." We realize the trial court heard these motions in an effort to be fair to defendant; however, there is a point at which a line must be drawn. A defendant, when represented by competent counsel, must not be permitted to proceed unfettered, to file a stream of *pro se* motions, especially when the result is a substantial delay of defendant's trial. The only exception affording the right to file *pro se* motions while represented by counsel are motions directed to defendant's attorney's representation.

The situation presented in this case is comparable to that in which "standby counsel" is appointed to assist a *pro se* defendant. The court may appoint "standby counsel" to assist a *pro se* defendant and to protect the judicial process from deterioration occasioned by improper and inadequate conduct of the defense. *People v. Partee* (1987), 157 Ill. App. 3d 231, 511 N.E.2d 1165.

■ A *pro se* defendant is entitled to retain control over the case he wishes to present to the jury and participation by "standby counsel" must not be allowed to destroy the jury's perception that the defendant is representing himself. (*McKaskle v. Wiggins* (1984), 465 U.S. 168, 79 L. Ed. 2d 122, 104 S. Ct. 944.) However, a defendant is not entitled to a "hybrid trial" where he alternates between proceeding *pro se* and being represented by counsel. (*McKaskle*, 465 U.S. at 178-84, 79 L. Ed. 2d at 133-37, 104 S. Ct. at 951-54.) The accused has no such right to both representation of counsel and to also conduct portions of the proceedings on his own. *Partee*, 157 Ill. App. 3d at 247, 511 N.E.2d at 1176.

Although defendant insisted he was not electing to proceed *pro se*, his actions suggest otherwise. Almost from the inception of the proceedings, defendant sought control of the case despite having representation of counsel. Defendant filed numerous *pro se* motions, some of which were quite extensive, and argued persuasively on those motions. Defendant constantly disagreed with the way his attorneys handled the preparation of his case and, in fact, this was a main cause of both attorneys' withdrawal from the case. Defendant also constantly argued with the trial court and insisted on continuing to argue with the court on matters decided adversely to his position.

■ Despite this prohibition against both self-representation and representation by counsel, the trial court's actions in hearing these motions allowed defendant to have just that. We conclude the trial court may have experienced some degree of frustration in having such a recalcitrant defendant. No doubt, the history of defendant's antics

in the 1½ years preceding the trial contributed to the trial court's decision to declare the mistrial. Nevertheless, a continuance rather than a mistrial was the proper action to be taken to correct the discovery violation. Therefore, and it is with great reluctance, we reverse the trial court's denial of defendant's motion to bar reprosecution.

Reversed.

GREEN and STEIGMANN, JJ., concur.