NO. 4-01-0551

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS,

          Plaintiff-Appellee,

v.

RICHARD D. CAMPBELL, JR.,

          Defendant-Appellant.

)

)

)

)

)

)

)

)

Appeal from

Circuit Court of

Champaign County

No. 01CF441

Honorable

Arnold F. Blockman,

Judge Presiding.

_________________________________________________________________

JUSTICE STEIGMANN delivered the opinion of the court:

In March 2001, the State charged defendant, Richard D. Campbell, Jr., with residential burglary (720 ILCS 5/19-3 (West 2000)).  In May 2001, a jury convicted defendant of the lesser included offense of criminal trespass to a residence (720 ILCS 5/19-4 (West 2000)), and the trial court later sentenced him to 364 days in jail.  

Defendant appeals, arguing that (1) he was denied his constitutional right to confront witnesses against him when his lawyer stipulated without defendant’s knowing consent to the testimony of the key prosecution witness and (2) the trial court erred at sentencing by imposing the maximum sentence based on its finding that defendant’s conduct “threatened serious harm.”  We affirm.

I. BACKGROUND

In March 2001, the State charged defendant with residential burglary, alleging that he knowingly and without authority entered the dwelling place of Blake M. Hoerr and Griff P. Powell, located at 1001 South First Street in Champaign (hereinafter the residence).  

At defendant’s May 2001 jury trial, Powell testified that on March 13, 2001, he was a student at the University of Illinois (University) living at the residence with Hoerr and six other men.  Spring break at the University had started a few days earlier and Powell and Hoerr both planned to leave Champaign that day.  

The mailbox next to the front door of the residence contained four or five names, and on March 13, 2001, there were no signs on the front of the residence indicating that there was a room for rent.  Around 10:15 a.m. that day, Powell was in his room on the second floor of the residence and Hoerr was sleeping on the couch in the first-floor living room when Powell heard a loud, banging noise on the front door.  Powell knew Hoerr was in the living room, so Powell did not go downstairs to answer the front door.  However, the loud knocking continued for a few minutes and then Powell heard talking.  Powell then started down the stairs to the first floor and saw defendant speaking to Hoerr as defendant made his way out the door. 

After defendant left, Powell and Hoerr both thought it would be a good idea to call the police because they both planned to leave town that day and “these empty houses are easy to break into.”  Powell and Hoerr both thought that defendant’s entry into the residence was strange.  Powell did not authorize defendant to come into the residence and had never seen him before.

Dennis Thomas testified that he had been a Champaign police officer for 27 years and in March 2001, he was assigned to the University campus area.  Spring and winter breaks are significant to police officers working that area because, due to the absence of students, the burglary rate goes up tremendously.  Around 10:17 a.m. on March 13, 2001, he was dispatched to the area near the residence, and based upon the description he received, he stopped defendant a few blocks away.  

Defendant first told Thomas that he had not been in the residence.  When Thomas informed defendant of a report that a person fitting his description had been there, defendant said that he had been there and was looking for someone.  However, when Thomas asked whom he was looking for, defendant could not provide a name.  Thomas then arrested defendant.

Powell and Thomas were the only witnesses for the State on the first day of trial.  After they testified, the prosecutor requested a continuance until the following day because the State’s third and last witness, Hoerr, who was under subpoena, had not appeared that morning for trial as he had promised.  The trial court agreed to continue the case until the following morning. 

When court reconvened the next day, the prosecutor informed the trial court that the parties had reached a stipulation regarding Hoerr’s testimony and that after the court accepted the stipulation, the State would rest.  The attorneys then presented the court with a written stipulation signed by each of them.  The stipulation the court read to the jury stated as follows:

“Blake Hoerr currently lives in Maryland pursuant to his employment and is not present to testify.  It is stipulated by the parties that if called as a witness, Blake Hoerr, would testify as follows:

That on March 3, [
sic
] 2001[,] at approximately 10:15 a.m., he was sleeping on a couch in the living room when he was awakened by someone knocking on the front door.  After hearing several knocks, he heard the interior wooden front door open.  He sat up and looked over the back of the couch and saw the defendant, Richard D. Campbell, Jr., in the hallway.  When the [d]efendant saw him, the defendant asked him if he had a room for rent.  He would testify that he told the defendant that he did not and the defendant then left the residence.  The defendant did not have his permission to enter the residence.  After the defendant left the residence, Blake Hoerr called 911 and reported that a white male had entered the residence without authority.  He provided a description of the defendant to the 911 dispatcher.  

Blake Hoerr would testify that he was transported to the intersection of First Street and Springfield Avenue at 10:30 a.m. and positively identified the defendant as the person who entered his residence.

The [p]arties agree to the above [s]tipulation.”

Both parties then rested, and the trial court, at defendant’s request, instructed the jury on the lesser included offense of criminal trespass to a residence.  The jury convicted defendant of that offense, and the court sentenced defendant as stated.  This appeal followed.

II. ANALYSIS

A. Must a Defendant Knowingly and Personally 

Consent to His Lawyer’s Agreement To Stipulate

to the Testimony of a Prosecution Witness?

Defendant first argues that he was denied his constitutional right to confront the witnesses against him because his lawyer stipulated to the testimony of a key prosecution witness, Hoerr, without defendant’s knowing consent.  Specifically, he contends that because the record is devoid of any personal, knowing, and voluntary waiver by him of his confrontation rights, the stipulation regarding Hoerr’s testimony was improper and violated his confrontation rights.

In support of his argument, defendant cites 
People v. McClanahan
, 191 Ill. 2d 127, 138, 729 N.E.2d 470, 477 (2000), for the proposition that “[t]rial by affidavit is the primary evil that the confrontation clause was designed to prevent.”  Defendant also cites 
Mattox v. United States
, 156 U.S. 237, 242-43, 39 L. Ed. 409, 411, 15 S. Ct. 337, 339 (1895), which held that the primary object of the constitutional right of confrontation was to prevent the use of depositions or affidavits.  

We disagree with defendant’s arguments and conclude that the authority he cites is inapposite to the question he raises on appeal--namely, when a defense counsel stipulates to prosecution testimony, may he do so without the defendant’s knowing consent?  We hold that the answer is yes.

Resolution of this issue requires examination of the role played by defense counsel and the extent to which a defendant must personally be involved in decisions affecting his defense or trial.  In 
People v. Ramey
, 152 Ill. 2d 41, 54, 604 N.E.2d 275, 281 (1992), the supreme court discussed four decisions that are ultimately for a criminal defendant to personally make after consulting with his attorney: (1) what plea to enter; (2) whether to waive a jury trial; (3) whether to testify in his behalf; and (4) whether to appeal.  The supreme court discussed those decisions in the context of the defense counsel’s authority and wrote as follows: 

“Beyond these four decisions, however, trial counsel has the right to make the ultimate decision with respect to matters of tactics and strategy after consulting with his client.  Such matters include what witnesses to call, 
whether
 
and
 
how
 
to
 
conduct
 
cross-examination
, what jurors to accept or strike and what trial motions should be made.”  (Emphasis added.)  
Ramey
, 152 Ill. 2d at 54, 604 N.E.2d at 281.  

At issue in 
Ramey
, a capital murder case, was the defendant’s claim that he was denied his constitutional rights to due process and effective assistance of counsel when his trial counsel presented a defense of self-defense against defendant’s wishes.  The supreme court rejected that argument, concluding that defense counsel’s assertion of self-defense did not deny defendant due process.  
Ramey
, 152 Ill. 2d at 54, 604 N.E.2d at 281.  

A few years after 
Ramey
, in 
People v. Brocksmith
, 162 Ill. 2d 224, 229-30, 642 N.E.2d 1230, 1233 (1994), the supreme court added a fifth decision to the list of those which a criminal defendant must personally make.  In that case, the supreme court concluded that a defendant in a criminal case, not his counsel, must make the ultimate decision whether to tender a lesser included offense instruction to the trial court with the request that the jury be so instructed.  The court explained that 

“Because it is defendant’s decision whether to initially plead guilty to a lesser charge, it should also be defendant’s decision to submit an instruction on a lesser charge at the conclusion of the evidence.  In both instances the decisions directly relate to the potential loss of liberty on an initially uncharged offense.”  
Brocksmith
, 162 Ill. 2d at 229, 642 N.E.2d at 1232.  

See also 
People v. Gilmore
, 183 Ill. 2d 579, 707 N.E.2d 1236 (1999) (where the supreme court in a supervisory order directed the First District Appellate Court to vacate its judgment in 
People v. Gilmore
, No. 1-96-3641 (November 30, 1998), and remand the case to the trial court “for an evidentiary hearing on whether defendant consented to defense counsel's strategy of not requesting an instruction for second degree murder.”)

Thus, the law remains essentially as this court described it in 
People v. Pondexter
, 214 Ill. App. 3d 79, 87, 573 N.E.2d 339, 345 (1991), in which we explained that “[a]n accused has either the right to have counsel represent him or the right to represent himself; however, a defendant has no right to both self-representation and the assistance of counsel.”  In 
Pondexter
, we explained that an election between these two rights must be made at the proper time and in the proper manner, with the following effects:  

“Once this election is made, the roles of attorney and client are defined.  Defendant retains the right to make decisions involving 'fundamental rights,' while those strategic matters involving 'the superior ability of counsel' are left to the attorney.  [Citation.] *** On the other hand, if a defendant retains counsel, that counsel has control over the day-to-day conduct of the defense.  He has the responsibility to determine when and whether to object, what witnesses to call and what defenses to develop.  These decisions, practically speaking, must be done without consulting the client.  
Wainwright v. Sykes
 (1977), 433 U.S. 72, 91, 53 L. Ed. 2d 594, 611, 97 S. Ct. 2497, 2509 (Burger, C.J., concurring).”  
Pondexter
, 214 Ill. App. 3d at 87, 573 N.E.2d at 345.

Consistent with the foregoing authority, we hold that in a criminal case, (1) the decision whether to stipulate to the testimony of a prosecution witness remains with defense counsel, not the defendant; and (2) the defendant need not be personally consulted about the matter.  We further hold that because a decision to stipulate to certain State evidence remains one of trial strategy within defense counsel’s sound judgment, just as “whether and how to conduct cross-examination” (see 
Ramey
, 152 Ill. 2d at 54, 604 N.E.2d at 281), defense counsel’s agreement to stipulate does not implicate the defendant’s right under either the federal or state constitutions to confront and cross-examine the witnesses against him.  See U.S. Const., amend. VI
; Ill. Const. 1970, art. I, §8.  

The only exception to our holding is when (1) the State’s entire case is to be presented by stipulation; and (2) the stipulation includes a statement that the evidence is sufficient to convict the defendant.  Under these circumstances, the stipulation is tantamount to a guilty plea, and the supreme court has made clear by its recent amendment to Supreme Court Rule 402  that before the trial court may accept such a stipulation, a defendant must (1) be personally admonished about such a stipulation, including the fact that by pleading guilty he is giving up his right “to be confronted with any witnesses against him” and (2) agree to it.  See 177 Ill. 2d R. 402(a)(4).

Accordingly, we conclude that in this case, the stipulation regarding Hoerr’s testimony was entirely proper and did not implicate defendant’s confrontation rights.

B. The Trial Court’s Finding That Defendant’s Conduct

“Threatened Serious Harm” 

Last, defendant argues that the trial court’s finding at sentencing that his conduct “threatened serious harm,” a statutory factor in aggravation under section 5-5-3.2(a)(1) of the Unified Code of Corrections (Unified Code) (730 ILCS 5/5-5-3.2(a)(1) (West 2000)), was erroneous.  Defendant further contends that because the court imposed the maximum sentence (364 days in jail), this court must reverse his sentence and remand for a new sentencing hearing.  

In response, the State argues that (1) defendant has forfeited this issue on appeal; and (2) even if the trial court’s remark was erroneous, reversal is not required on this record.  We agree with the State. 

First, we note that defendant did not file a post-sentencing motion.  Section 5-8-1(c) of the Unified Code requires a defendant to file a written postsentencing motion in the trial court to preserve sentencing issues for appellate review (730 ILCS 5/5-8-1(c) (West 2000)).  
People v. Reed
, 177 Ill. 2d 389, 393, 686 N.E.2d 584, 586 (1997).  Thus, we conclude that defendant has forfeited on appeal any alleged irregularities that occurred at the sentencing hearing by his failure to present those matters to the trial court in a postsentencing motion. 

We also agree with the State that even if the trial court erred by mentioning that defendant’s conduct threatened serious harm, the mere mention of that aggravating factor does not require reversal.  Defendant possesses an astonishing record of criminality.  At the time of his June 2001 sentencing for criminal trespass to a residence, he was 44 years old and had  acquired 10 prior felony convictions going back 25 years.  He had served seven 
separate
 prison sentences in Illinois and committed this offense while on parole.  He also had four prior misdemeanor convictions.  On this record, we are convinced that the trial court would have imposed--and the defendant would have deserved--the maximum sentence possible no matter what the court may have thought about other aggravating or mitigating factors.  See 
People v. Bourke
, 96 Ill. 2d 327, 332, 449 N.E.2d 1338, 1340 (1983) (where it can be determined from the record that the weight placed on an allegedly improperly considered aggravating factor was so insignificant that it did not lead to a greater sentence, remandment is not required); see also 
People v. Place
, 238 Ill. App. 3d 1035, 1048, 605 N.E.2d 634, 643 (1992) (no remandment necessary when the trial court made a cursory comment regarding an improper aggravating factor). 

III. CONCLUSION

For the reasons stated, we affirm the trial court’s judgment.  

Affirmed.

McCULLOUGH, P.J., concurs.

COOK, J., dissents.

JUSTICE COOK, dissenting:

I respectfully dissent.

Even if we assume that the decision to stipulate to the testimony of a key witness is a matter of trial strategy, such as what witnesses to call and whether and how to conduct cross-examination, defense counsel may make such decisions only "after consulting with his client."  
Ramey
, 152 Ill. 2d at 54, 604 N.E.2d at 281.  There is no support for the majority's holding that "defendant need not be personally consulted about the matter."  Slip op. at 9.

Defense counsel's stipulation to the testimony of a witness can constitute ineffective assistance of counsel.  Counsel in a criminal case may waive his client's sixth amendment right of confrontation by stipulating to the admission of evidence, 
so
 
long
 
as
 the defendant does not dissent from his attorney's decision, and 
so
 
long
 
as
 it can be said that the attorney's decision was part of a prudent trial strategy.  
United States v. Plitman
, 194 F.3d 59, 63 (2d Cir. 1999) (defendant achieved several tactical advantages as a result of stipulation: rushed prosecution to trial, limited witness's testimony, allowed attack on officer who related the conversation).  The argument that defendant's failure to object to actions taken by his counsel at trial constitutes a waiver has been rejected on the basis defendant may have been surprised by the action and may not have been aware he had any right to complain.  3 W. LaFave, J. Israel, & N. King, Criminal Procedure §11.6(a), at 54-55 & n.62.9 (2d ed. Supp. 2002).  The failure to consult with defendant may constitute ineffective assistance if it deprives defendant of an opportunity he otherwise would have taken advantage of.  
Roe v. Flores-Ortega
, 528 U.S. 470, 476-80, 145 L. Ed. 2d 985, 994-97, 120 S. Ct. 1029, 1034-36 (2000) (opportunity to appeal).         Is the decision to stipulate to the testimony of a key witness a decision involving fundamental rights, such as the decision to plead guilty, which defendant has the right to make?  Or is it a matter involving trial strategy, the day-to-day conduct of the trial, which must in practice be made by counsel?  

The answer is that the decision to stipulate is not only similar to a guilty plea, it often is a guilty plea.  A defendant may dispute a particular issue, a ruling on a motion to suppress, for example, but otherwise stipulate that he does not contest the sufficiency of the evidence.  If the disputed issue is resolved against him, defendant may be convicted without a trial.  See 
People v. Horton
, 143 Ill. 2d 11, 16, 570 N.E.2d 320, 322 (1991); 
People v. Davis
, 286 Ill. App. 3d 686, 688, 676 N.E.2d 675, 677 (1997). 

The majority recognizes that the rule it announces today cannot be applied where there is "a stipulation that the evidence is sufficient to convict."  177 Ill. 2d R. 402(a).  In that situation, the defendant must be advised by the court that he has the right to plead guilty or not guilty and that by stipulating the evidence is sufficient to convict he waives the right to a trial by jury and the right to be confronted with any witnesses against him who have not testified.  177 Ill. 2d R. 402(a)(4).  Even where the stipulation does not rise to the level of Rule 402, even where there is no stipulation "that the evidence is sufficient to convict," it should be recognized that the decision to stipulate to the testimony of a key witness is more like the decision to plead guilty, a fundamental right, than it is like a matter of trial strategy.      

As a result of today's decision, if counsel stipulates at trial to the testimony of a witness without discussing it with defendant, and defendant stands up and says "I object, that witness is lying and would admit it if he were on the stand," the court may properly respond, "sit down, this isn't your call."  I recognize there are concerns of judicial administration here, but the solution is not to suggest to counsel that defendant be excluded from important decisions in the case.  See 3 W. LaFave, J. Israel, & N. King, Criminal Procedure §11.6(b), at 55 (2d ed. Supp. 2002) (balancing of interests).  I suggest that the decision whether to stipulate to the testimony of a key witness belongs to the defendant, after consultation with defense counsel.