**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 190126-U

Order filed October 21, 2021

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-19-0126 Circuit No. 18-CF-462 |
| KENCEY RICO PURDLE, | ) ) ) | Honorable Katherine S. Gorman, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE McDADE delivered the judgment of the court.
Justices Holdridge and Lytton concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:   The circuit court did not abuse its discretion in determining there was manifest necessity for declaring a mistrial. Defendant's conviction for criminal sexual assault violates the one-act, one-crime doctrine.

¶ 2    Defendant, Kencey Rico Purdle, appeals his convictions for home invasion and criminal sexual assault. Initially, defendant raised two arguments on appeal: (1) the Peoria County circuit court abused its discretion in declaring a mistrial during his first trial, and (2) the court used an improper extended-term sentencing range in imposing his sentence for criminal sexual assault.

Subsequently, we ordered the parties to provide supplemental briefing on whether defendant's conviction for criminal sexual assault violates the one-act, one-crime doctrine. Upon review of the original and supplemental briefs, we affirm in part and vacate in part.

¶ 3                                I. BACKGROUND

¶ 4        Defendant was charged with home invasion (720 ILCS 5/19-6(a)(6) (West 2018)), criminal sexual assault (*id.* § 11-1.20(a)(1)), and residential burglary (*id.* § 19-3(a)). The charges stemmed from a single incident in which defendant allegedly entered the residence of the victim and sexually assaulted her.

¶ 5        A jury trial was held. After the jury was selected, defendant moved for a mistrial based on the racial composition of the jury pool. The court denied the motion.

¶ 6        The State called the victim as its first witness. The victim testified that, on the night of the incident, she was sleeping in her residence. Her nine-year-old son and six-year-old daughter were also in the residence. The victim woke at 4 a.m. and saw a man standing in her bedroom. He was exposing himself. She had seen the man before. He had exposed himself to her outside her residence on a prior occasion. She identified defendant in court as the man who had been in her bedroom. Defendant told her that if she did anything "stupid," he would "do it to [her] daughter." He then placed his penis in her mouth and vagina.

¶ 7        The victim testified that she identified defendant in a photographic lineup shortly after the incident. At the time, she said that she was 90% sure that he was the man who had assaulted her, but she would need to see him again. On cross-examination, defense counsel asked the victim when she saw defendant again before the trial. The victim replied:

> "My case manager at the apartment looked up his other felonies since his name
> was on there, and it showed a picture of him on the computer, a large screen. ***

2

She didn't look up what he did this time. She looked up what he did prior times, and she showed me a picture of him."

The victim saw this photograph approximately eight weeks after she was assaulted. Defense counsel asked the victim if she knew which photograph she was looking at. She replied, "His other felonies." The victim did not know when the photograph was taken. Defense counsel asked the victim where she obtained this photograph. The victim replied, "I don't know, because I'm not the one that pulled it up. It was something to do with his past felonies." Defense counsel again asked the victim where she obtained the photograph. The victim replied, "It was his name from a felony background and had his picture up." She then said that the photograph came from police records.

¶ 8        After defense counsel finished his questioning, the court excused the jurors from the courtroom and asked the parties if they had any motions they wanted to make. The State said that the victim had never mentioned knowing about defendant's past felonies before her trial testimony.

¶ 9        The court stated that it believed the victim had mentioned defendant's prior felonies approximately five times and that two of the times were invited by defense counsel's questions. The court said that it did not know if these were felony convictions or felony arrests for which defendant was later acquitted. The court stated: "Now, the fear here is always that if the jury will disregard the evidence and say the defendant's got a bunch of prior felony convictions, he's a bad person, so we'll convict him because of that, and I don't know how valid that fear is." The court noted that declaring a mistrial was one option, but it had not yet decided whether it would do so.

3

¶ 10     The court said that it "let it go" the first time the victim mentioned defendant's prior felonies, but she mentioned it several more times. The court stated that on at least two of these occasions, defense counsel should have known that his questions were going to cause the victim to talk about defendant's past felonies. The court said that the defense "must not think it's so bad since they went and asked her to say it two more times." The court stated that it did not know if defense counsel's questions could amount to a waiver of the error. The court asked if either party wanted a mistrial or if defense counsel wanted to speak to defendant alone. Defense counsel said that he wanted time to speak with defendant, and a recess was held.

¶ 11     When the parties returned to the courtroom, the court recounted what had happened during the victim's testimony. The court said that it made a "[j]udgment call" not to stop the proceedings after the first time the victim mentioned defendant's prior felonies. The court believed that the jury might not notice. The court also believed that if it had stopped the proceedings and excused the jury, it would have highlighted the victim's testimony concerning defendant's prior felonies in the minds of the jurors. The court said that it did not know that the victim would proceed to mention defendant's felonies several more times. The court explained that it stopped the proceedings after defense counsel had completed his cross-examination because it seemed like a natural time to stop that would not raise the suspicions of the jurors.

¶ 12     The court asked defense counsel if he was requesting a mistrial. Defense counsel said he had discussed the matter with defendant and that they would not be requesting a mistrial. The State said it would not be requesting a mistrial either. The court asked to see the attorneys in chambers.

¶ 13     When the parties returned to the courtroom, the court said that it was declaring a mistrial. The court stated that it had discussed with the attorneys the possibility that defense counsel had

4

waived defendant's right not to have the jury know about his felony convictions by repeatedly asking the victim about the source of the photograph. The court said that it did not think there was "such a thing as waiver by defense," but that it was declaring a mistrial even if there was. The court reasoned: "If [defendant] has got prior felony convictions in his background at this point in the trial at least he has a right for the jury to not know that. That right was terribly violated." The court said that continuing the trial would be "cheating the defendant out of a fair trial." The court noted that defendant's prior felony convictions might have been admitted if defendant chose to testify. The court reasoned: "Well, that's ruined. That's all out the window now, because the jury got told about it right off the bat the first witness."

¶ 14      Both parties clarified that they were not requesting a mistrial. The court stated that it was declaring the mistrial on its own motion.

¶ 15      A second jury trial was held, and defendant testified on his own behalf. The State introduced evidence in rebuttal that defendant had previously been convicted of aggravated discharge of a firearm. The jury found defendant guilty of all three counts.

¶ 16      Defendant filed a motion for a new trial alleging, *inter alia*, that the court erred in declaring a mistrial over his objection during the first trial. At a hearing on the motion, defense counsel said that he opposed a mistrial in the first trial because he did not want to give the victim an opportunity to improve her story and correct mistakes in her testimony from the first trial. The court denied the motion.

¶ 17      The court imposed consecutive sentences of 16 years' imprisonment for home invasion and 14 years' imprisonment for criminal sexual assault. The court did not impose a sentence for residential burglary.

¶ 18 On appeal, we ordered the parties to provide supplemental briefing on the issue of whether defendant's criminal sexual assault conviction violated the one-act, one-crime doctrine.

¶ 19 II. ANALYSIS

¶ 20 A. Mistrial

¶ 21 Defendant argues that the circuit court abused its discretion in declaring a mistrial on its own motion, and, as a result, the second trial violated his right against double jeopardy. Specifically, defendant contends that the court failed to consider his right to have a particular tribunal decide his case and that the improper testimony concerning his prior felonies was not so egregious that manifest necessity for a mistrial existed. We find that the circuit court did not abuse its discretion in declaring a mistrial.

¶ 22 When the circuit court declares a mistrial without the defendant's request, double jeopardy bars the retrial of the defendant unless there was a manifest necessity for the mistrial. *People v. Pondexter*, 214 Ill. App. 3d 79, 83 (1991). "The manifest necessity standard is a command to the trial court not to foreclose the defendant's right to have a particular tribunal decide his fate until a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by continuing the proceedings." *People v. Dahlberg*, 355 Ill. App. 3d 308, 314 (2005); see also *People v. Segoviano*, 189 Ill. 2d 228, 241 (2000). "The trial court must carefully consider all of the circumstances and any reasonable alternatives to declaring a mistrial." *People v. Bagley*, 338 Ill. App. 3d 978, 982 (2003). "Whether to declare a mistrial is a matter within the sound discretion of the trial court, and double jeopardy concerns do not arise unless that discretion is abused." *Id.*

¶ 23 In determining whether manifest necessity warranted a mistrial, a reviewing court may consider several factors, including:

"(1) whether the difficulty was the product of the actions of the prosecutor, defense counsel, or trial judge, or was events over which the participants lacked control; (2) whether the difficulty could have been intentionally created or manipulated by the prosecution to strengthen its case; (3) whether the difficulty, prejudice, or other legal complication might have been 'cured' by another alternative that would have preserved the trial's fairness; (4) whether the trial judge actually considered the alternatives to a mistrial; (5) whether a subsequent conviction would be subject to reversal on appeal; (6) whether the trial judge acted in the heat of the trial confrontation; (7) whether the trial judge's decision rested on an evaluation of the demeanor of the participants, the 'atmosphere' of the trial, or any other factors that similarly are not amenable to strict appellate review; (8) whether the trial judge granted the mistrial solely for the purpose of protecting the defendant against possible prejudice; (9) whether the evidence the State presented, prior to the mistrial, suggested a weakness in its case (*e.g.*, a witness failed to testify as anticipated); (10) whether the jurors had heard enough of the case to formulate some tentative opinions; (11) whether the case had proceeded so far as to give the prosecution a substantial preview of the defense's tactics and evidence; and (12) whether the composition of the jury was unusual." *People v. Street*, 316 Ill. App. 3d 205, 211-12 (2000).

¶ 24        In the instant case, the circuit court did not abuse its discretion in determining that there was a manifest necessity for a mistrial. Defendant's right to a fair trial was compromised where the victim repeatedly mentioned defendant's "past felonies" and "other felonies" during her testimony. See *People v. Donoho*, 204 Ill. 2d 159, 170 (2003) ("Defendant is entitled to have his

guilt or innocence evaluated solely on the basis of the charged crime."); *People v. Gregory*, 22 Ill. 2d 601, 603 (1961) ("[I]t is well settled that evidence of other offenses unrelated to the crime for which a defendant is on trial is incompetent."). A conviction following this error could have been subject to reversal on appeal. See *People v. Lindgren*, 79 Ill. 2d 129, 140 (1980) ("The erroneous admission of evidence of other crimes carries a high risk of prejudice and ordinarily calls for reversal.").

¶ 25     The victim's erroneous testimony appeared to be unexpected by both parties, and there is no indication that the prosecution created this error to strengthen its case. The improper testimony occurred on cross-examination, and the prosecutor stated that she was unaware that the victim knew about defendant's past felonies.

¶ 26     The case had not proceeded so far as to give the prosecution a substantial preview of the defense's strategy. Only one State witness had testified at the time the court declared a mistrial.

¶ 27     Nothing in the record indicates that the composition of the jury was unusual in a way that was beneficial to defendant. In fact, defendant had previously moved for a mistrial due to lack of racial diversity in the jury pool.

¶ 28     The court gave significant thought to its decision to declare a mistrial. The court sought input from the parties and gave defense counsel the opportunity to discuss the matter with defendant. Both parties advised the court that they were not requesting a mistrial. The court noted that defense counsel had arguably invited the victim's improper testimony on two of the approximately five occasions that she mentioned defendant's prior felonies. The court considered the possibility that the defense waived the error by doing this. Nevertheless, the court concluded that continuing the trial would "cheat[ ] the defendant out of a fair trial." Thus, the record indicates that the court declared a mistrial solely to protect defendant from possible prejudice.

¶ 29        In light of all the circumstances discussed, we conclude that the circuit court did not abuse its discretion in determining that a manifest necessity for a mistrial existed. Accordingly, defendant's second trial was not barred on double jeopardy grounds. See *Bagley*, 338 Ill. App. 3d at 982.

¶ 30        We reject defendant's argument that the circuit court erred in declaring a mistrial because the victim's testimony caused little prejudice to him. Defendant notes that he testified at his second trial and that the jury learned that he had a prior conviction for aggravated discharge of a firearm. Defendant argues that, if he were always planning on testifying, the victim's improper testimony would not have created any additional prejudice. However, the victim did not testify that defendant had one prior felony conviction for a firearm offense. Rather, she testified that he had multiple, unspecified "past felonies." The victim's testimony suggested that defendant had more prior felonies than the one conviction admitted for impeachment purposes in defendant's second trial.

¶ 31        Also, while defendant ultimately chose to testify in his second trial, we cannot speculate that he was planning on testifying in his first trial as well. Moreover, had defendant chosen to testify in his first trial, it would have been unclear whether this choice was influenced by the victim's improper testimony. If defendant's first trial had proceeded, defendant would not have even had the option of preventing the jury from learning about his criminal history by declining to testify, as the victim had already discussed his prior felonies.

¶ 32        We also reject defendant's argument that the court erred in finding that a manifest necessity for a mistrial existed because it failed to consider his right to have a particular tribunal decide his fate or consider other alternatives to a mistrial. While the court did not explicitly discuss defendant's right to have his case decided by a particular tribunal, it clearly considered

9

the possibility of continuing with the trial on the basis that defendant waived the error. In determining that a mistrial was necessary despite defendant's potential waiver, the court implicitly found that defendant could not receive a fair trial before that tribunal. Again, we note that defendant had already indicated his dissatisfaction with this particular tribunal when he sought a mistrial because of its composition.

¶ 33 Defendant contends, without further elaboration, that a limiting instruction would have cured the error. Defendant argues that because the court did not explicitly consider this option on the record, it abused its discretion in declaring a mistrial. However, it is not apparent that a limiting instruction would have cured the prejudice to defendant. It may have had the effect of highlighting the improper testimony. Notably, neither party suggested a limiting instruction as an alternative to a mistrial. Under these circumstances, the court's failure to explicitly consider the option of giving a limiting instruction did not render its decision to declare a mistrial an abuse of discretion.

¶ 34 We reject defendant's reliance on *Pondexter*, 214 Ill. App. 3d 79, in support of his argument that the error in this case did not prejudice either party enough to outweigh defendant's right to have his case decided by the jury in the first trial. In *Pondexter*, after the State had presented its case-in-chief, the defendant attempted to present the testimony of a witness who had not been disclosed to the State in discovery. *Id.* at 81. The court, on its own motion, declared a mistrial to give the defendant the opportunity to call the witness. *Id.* at 82. The appellate court held that the circuit court erred in declaring a mistrial because there were other sanctions available, namely, granting a continuance or barring the witness from testifying. *Id.* at 85-86. The *Pondexter* court noted that "[c]ourts have held that ordering a mistrial for a discovery violation is not an appropriate sanction." *Id.* at 85.

10

¶ 35 Unlike in *Pondexter*, the error in the instant case was not a discovery violation that could result in unfair surprise to the other party. Rather, it was the improper introduction of evidence of defendant's past crimes, which was potentially reversible error. See *Lindgren*, 79 Ill. 2d at 140. The court was within its discretion to find that manifest necessity for a mistrial existed under the circumstances of this case. See *supra* ¶¶ 24-29.

¶ 36                                    B. One-Act, One-Crime

¶ 37 Defendant argues that his criminal sexual assault conviction violates the one-act, one-crime doctrine because it is a lesser included offense of home invasion. The State confesses error.

¶ 38 Although this issue was not preserved, it may be reviewed under the second prong of the plain error doctrine because a one-act, one-crime violation affects the integrity of the judicial process. *People v. Coats*, 2018 IL 121926, ¶ 10. The application of the one-act, one-crime doctrine is reviewed *de novo*. *Id.* ¶ 12.

¶ 39 A defendant may not be convicted of multiple offenses that are based on the same physical act. *People v. King*, 66 Ill. 2d 551, 566 (1977). However, when the defendant has committed several acts, multiple convictions are improper only if one offense is a lesser included offense of another. *People v. Miller*, 238 Ill. 2d 161, 165 (2010). We employ a two-step analysis to determine whether there was a violation of the one-act, one-crime doctrine. *People v. Rodriguez*, 169 Ill. 2d 183, 186 (1996). First, it must be determined whether the defendant's conduct consisted of a single physical act or separate acts. *Id.* If the defendant committed multiple acts, the court then determines whether any of the offenses are lesser included offenses. *Id.* In this case, we limit our review to the second part of the analysis, as neither of the parties argues that defendant's conduct consisted of a single physical act.

11

¶ 40    When determining whether one offense is a lesser included offense of another, we employ the abstract elements approach, which requires the court to compare the elements of both offenses. *Miller*, 238 Ill. 2d at 163, 166. "If all of the elements of one offense are included within a second offense and the first offense contains no element not included in the second offense, the first offense is deemed a lesser-included offense of the second." *Id.* In *People v. Reveles-Cordova*, 2020 IL 124797, the defendant was convicted and sentenced on one count of criminal sexual assault as well as one count of home invasion predicated upon criminal sexual assault. The Illinois Supreme Court vacated the defendant's criminal sexual assault conviction and held:

> "Proof of criminal sexual assault is a necessary element of proof of home invasion predicated on criminal sexual assault. All the elements of criminal sexual assault are included in the offense of home invasion predicated on criminal sexual assault, and criminal sexual assault contains no element not included in home invasion. It is impossible to commit home invasion predicated upon criminal sexual assault without committing criminal sexual assault. As such, criminal sexual assault is a lesser-included offense of home invasion." *Id.* ¶ 21.

¶ 41    The instant case is analogous to *Reveles-Cordova*. Here, defendant was convicted of criminal sexual assault (720 ILCS 5/11-1.20(a)(1) (West 2018)) as well as home invasion predicated on criminal sexual assault (*id.* § 19-6(a)(6)). Home invasion predicated on criminal sexual assault contains all the elements of criminal sexual assault. *Reveles-Cordova*, 2020 IL 124797, ¶ 21. Therefore, defendant's criminal sexual assault conviction violates the one-act, one-crime doctrine because it is a lesser included offense of home invasion predicated on criminal sexual assault.

¶ 42   Accordingly, we accept the State's confession of error and vacate defendant's criminal sexual assault conviction and sentence of 14 years' imprisonment.

¶ 43                               C. Sentencing

¶ 44   Defendant also argues that the circuit court improperly used an extended-term sentencing range as a reference point in imposing the sentence for criminal sexual assault. It is unnecessary for us to review this issue, as we have vacated defendant's conviction for criminal sexual assault.

¶ 45                               III. CONCLUSION

¶ 46   The judgment of the circuit court of Peoria County is affirmed in part and vacated in part.

¶ 47   Affirmed in part and vacated in part.