THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOSEPH M. MITCHELL, Defendant-Appellant.

Fourth District   No. 4—92—0417

Opinion filed March 25, 1993.

Daniel D. Yuhas and Lawrence Bapst, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Brown, State's Attorney, of Pontiac (Norbert J. Goetten and Robert J. Biderman, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE LUND delivered the opinion of the court:

Following a jury trial, defendant was convicted of the offense of aggravated battery (Ill. Rev. Stat. 1991, ch. 38, par. 12—4(a)) and attempt (murder) (Ill. Rev. Stat. 1991, ch. 38, pars. 8—4(a), 9—1(a)(1)). He was sentenced to a term of 10 years' imprisonment and ordered to pay restitution in the amount of $14,315.13. Defendant appeals, claiming (1) he is entitled to a new trial because the trial court erroneously instructed the jury that it could find defendant guilty of attempt (murder) without finding that he had the intent to kill, and (2) the order of restitution was a meaningless act and must be vacated because defendant has no assets and will never be able to pay the full amount. We affirm.

An instruction must make it clear that to convict for attempt (murder), nothing less than a criminal intent to kill must be shown. (*People v. Harris* (1978), 72 Ill. 2d 16, 27, 377 N.E.2d 28, 33.) In this case, the jury was given a definitional instruction for murder, over defense counsel's objection, that included alternative mental states. People's instruction No. 9 stated:

"A person commits the offense of murder when he kills an individual without lawful justification if, in performing the acts which cause the death, (1) he intends to kill or do great bodily harm to that individual or another; or (2) he knows that such acts will cause death to that individual or another; or (3) he knows that such acts create a strong probability of death or great bodily harm to that individual or another."

Jury deliberations began at 9:04 a.m. Approximately three hours later, the trial court discovered its error. The trial judge informed the jurors that the attempt (murder) instructions were flawed and a new instruction would be prepared while they recessed for lunch. All instructions and verdict forms were returned

to the bailiff. The jury had already reached a verdict and had signed the verdict form for the charge of aggravated battery.

When the jury returned, the trial judge explained that the instruction defining the offense of murder included three alternative ways to commit the offense and that this was incorrect. He then read the correct instruction to the jury and provided it with a written copy. The substituted instruction read:

> "A person commits the offense of murder when he kills an individual, without lawful justification if, in performing the acts which cause the death, he intends to kill that individual."

The jury was also supplied with blank verdict forms for both charges.

At 7:15 p.m., the jury sent out a note asking for the "legal definition of intent or with intent? Is it a positive act or a positive thought[?]" The court responded with an instruction setting out the Illinois statutory definition:

> "Intent. A person intends, or acts intentionally or with intent, to accomplish a result or engage in conduct described by the statute defining the offense, when his conscious objective or purpose is to accomplish that result or engage in that conduct." (Ill. Rev. Stat. 1991, ch. 38, par. 4—4.)

At 7:58 p.m., the jury found defendant guilty of both charges against him.

■ Despite the fact that the error had been corrected, defendant claims that allowing the jury to deliberate for three hours with an incorrect instruction so tainted the jury as to deny him a fair trial. Defendant cites *People v. Manzo* (1989), 183 Ill. App. 3d 552, 539 N.E.2d 237, where a jury was instructed to find the defendant guilty of attempt (murder) if it found that he intended to kill *or* do great bodily harm to the victim. Unlike the case at hand, the trial court discovered the mistake approximately 10 minutes after deliberations had begun. Deliberations were halted, and the jury was given the proper instruction. On appeal, the First District Appellate Court found no error, because the trial court's prompt action cured any error which may have resulted from the erroneous instruction.

Defendant distinguishes *Manzo* from the case at hand, precisely because there was no *prompt* action to correct the erroneous instruction. Defendant contends the lengthy delay in removing the erroneous instruction tainted the jury. We disagree. At the time the jury was told to halt its deliberations, it had reached a verdict only as to the charge of aggravated battery. After being properly in-

structed, deliberations continued for nearly seven hours. The fact that the jury requested a precise definition of intent indicates the deliberation was focused on the very instructions the trial judge had hoped to impress upon it when he corrected the definition of murder. Any claim of prejudice to defendant is pure speculation. Based upon these facts, it is apparent that the jury considered the charges against defendant in meticulous detail. We find no reversible error.

■ Next, defendant contends the order of restitution was a meaningless act because he has no assets and will never be able to comply with the order. Defendant cites *People v. Wagner* (1989), 189 Ill. App. 3d 1041, 546 N.E.2d 283, where our court found an order for restitution to be inappropriate. In *Wagner*, the defendant was 16 years of age at the time of trial, but due to the nature of the crime was tried as an adult. The trial court ordered restitution in the amount of $44,568 and sentenced defendant to 15 years' imprisonment. Significantly, the trial court noted that the order of restitution was "a meaningless act for the most part because you have absolutely no ability to pay those sums of money, but certainly while in the Department of Corrections you could not do so." *Wagner*, 189 Ill. App. 3d at 1055, 546 N.E.2d at 292.

We now conclude our decision relating to the restitution issue in *Wagner* was in error. A careful consideration of section 5—5—6 of the Unified Code of Corrections (Code) (Ill. Rev. Stat. 1991, ch. 38, par. 1005—5—6) (restitution), together with section 5—5—3 of the Code (Ill. Rev. Stat. 1991, ch. 38, par. 1005—5—3) (disposition), necessarily leads to the conclusion that restitution is a sentencing provision and an option "alone or in combination" with other dispositions. (Ill. Rev. Stat. 1991, ch. 38, par. 1005—5—3(b).) The first paragraph of section 5—5—6 of the Code states, in part, "the court shall at the sentence hearing determine whether restitution is an appropriate sentence to be imposed." Ill. Rev. Stat. 1991, ch. 38, par. 1005—5—6.

In *Wagner*, we emphasized the lack of ability to pay and vacated the restitution provision. We now determine ability to pay is only relevant when (1) determining the manner of payment (Ill. Rev. Stat. 1991, ch. 38, par. 1005—5—6(f)); (2) defendants are being assessed for victims' counseling services (Ill. Rev. Stat. 1991, ch. 38, par. 1005—5—6(g)); and (3) a petition to revoke restitution is filed (Ill. Rev. Stat. 1991, ch. 38, par. 1005—5—6(i)). Section 5—5—6(i) of the Code prohibits revocation "unless the court shall find that the offender has had the financial ability to make restitution, and he has wilfully refused to do so." (Ill. Rev. Stat. 1991, ch. 38,

par. 1005—5—6(i).) There is no provision requiring consideration of the ability to pay when deciding whether restitution should be part of a sentence.

Section 5—5—6(k) of the Code does not bar a separate civil action by the victim. (Ill. Rev. Stat. 1991, ch. 38, par. 1005—5—6(k).) No restitution is to be ordered "on account of pain and suffering." (Ill. Rev. Stat. 1991, ch. 38, par. 1005—5—6(b).) Now a restitution order creates a judgment lien in favor of the victim, which is similar to liens that would follow a judgment in civil actions. (Ill. Rev. Stat. 1991, ch. 38, par. 1005—5—6(m).) Irrespective of whether the defendant has property or assets, or might acquire any, there is a value in having a restitution order in place. We note that debts created by restitution orders are dischargeable in bankruptcy. See *Pennsylvania Department of Public Welfare v. Davenport* (1990), 495 U.S. 552, 109 L. Ed. 2d 588, 110 S. Ct. 2126.

We conclude that section 5—5—6 of the Code basically allows for a court order which at least partially substitutes for civil relief in favor of the injured party or parties. The lack of ability of a defendant to pay in a civil action is of no relevance in deciding the propriety of a judgment. Other than the exceptions recognized in this opinion, that lack of ability does not prevent a restitution order.

We conclude the trial court has the authority to order restitution as a part of the sentence, regardless of the term of the incarceration and defendant's financial resources. The fact that it may never be collectible is of no importance. To the extent that *Wagner* suggests otherwise, we overrule it.

In rejecting defendant's argument that his restitution order should be vacated because of the unlikelihood that he will ever be able to comply, we reassert what we wrote in *People v. Nasser* (1991), 223 Ill. App. 3d 400, 410, 584 N.E.2d 1010, 1016: "[T]he Illinois General Assembly intended, in every criminal case where possible, to achieve two goals: (1) to make victims whole for *any* injury received at the hands of the convicted criminal; and (2) to make criminals pay *all* of the costs which arise as a result of injuries the victims suffered." (Emphasis in original.) No one can say with certainty what the future holds, and even though in a case like the present one, it appears *unlikely* that defendant will be able to comply with the restitution order, no one can say his compliance is *impossible*.

An incarcerated convict could obtain funds to pay a restitution order through inheritance, winning the lottery, or perhaps because

of some cause of action that might arise as a result of his imprisonment. Indeed, in consideration of that last eventuality—an inmate obtains a money judgment against personnel of the Illinois Department of Corrections—the General Assembly in 1984 added section 13—202.1 to the Code of Civil Procedure (Civil Code) (Pub. Act 83—1040, §1, eff. Jan. 5, 1984 (1983 Ill. Laws 7104); see Ill. Rev. Stat. 1991, ch. 110, par. 13—202.1) so that whenever such a judgment in excess of $500 is rendered, steps can be taken to insure that the victim of that inmate's crime is notified and can bring a civil action (if necessary) to obtain the money due the inmate for the victim's benefit.

We note that section 13—202.1 of the Civil Code further provides that if an inmate is in prison because he committed first degree murder (see Ill. Rev. Stat. 1991, ch. 38, par. 9—1), a Class X felony, or a Class 1 felony, then there shall be *no* statute of limitations on any action the victim may choose to bring against that inmate. Thus, the legislature has provided that such an inmate literally is subject for the rest of his life to being sued civilly for the harm he caused by his felonious behavior.

Last, we note that last year, by enacting Public Act 87—941 (Pub. Act 87—941, eff. Aug. 28, 1992 (1992 Ill. Legis. Serv. 1770 (West))), the legislature added language to section 13—202.1 of the Civil Code to provide that (1) the absence of a statute of limitations shall apply regardless of the date on which a defendant's conduct is alleged to have occurred or the date of any conviction resulting therefrom, and (2) section 13—202.1 of the Civil Code shall be applied retroactively and shall revive causes of action which otherwise may have been barred under limitations provisions previously' in effect. Based upon this legislative history, we conclude that the legislature has clearly set forth the policy of this State as strongly favoring restitution for the victims of crime even when, as here, the person ordered to pay restitution is imprisoned and not likely to be able to comply with the restitution order.

We fully recognize that trial courts do not like to enter nugatory orders. Further, a circuit judge might believe that entering orders of restitution on incarcerated defendants will subject them to criticism for "grandstanding"—that some might contend a court is trying to show to the victim and the local community that the court is providing restitution for the victim when, in fact, such restitution is unlikely ever to be accomplished. In urging trial courts to order restitution notwithstanding a defendant's incarceration, we suggest that the trial courts address these concerns directly by explaining

at the sentencing hearing, when ordering restitution, that no one should leave the courtroom expecting that the incarcerated defendant has much chance of complying with the restitution order. The court should explain that it is taking the action of ordering restitution so that, in the unlikely event defendant obtains funds from any source (as discussed earlier herein), then the victim (with a minimum of red tape) can latch onto those funds. In our judgment, if a trial judge explains this latter point fully and frankly, the concerns he or she might have about being viewed as "grandstanding" should dissipate entirely.

Affirmed.

STEIGMANN, P.J., and KNECHT, J., concur.