No. 2--01--0159

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_________________________________________________________________

THE PEOPLE 0F THE STATE         )  Appeal from the Circuit Court

OF ILLINOIS, ) of Lake County.

                                )

Plaintiff-Appellee, ) 

                                )

v.                              ) No. 97--CF--3027

)

DEMETRIUS WILSON,               ) Honorable

  ) Christopher C. Starck,

Defendant-Appellant
.
 ) 
Judge, Presiding.
             

________________________________________________________________

Modified Upon Denial of Rehearing

JUSTICE O'MALLEY delivered the opinion of the court:

Defendant, Demetrius Wilson, appeals from his conviction of murder (720 ILCS 5/9-1(a)(1) (West 1996)).  We affirm.

A jury found defendant guilty of one count of murder and four counts of armed robbery (720 ILCS 5/18-2(a) (West 1996)).  This court affirmed his armed robbery conviction and modified his sentence for that offense but reversed his murder conviction and remanded the cause for a new trial on that charge.  See 
People v. Wilson
, 312 Ill. App. 3d 276 (2000).  On remand, another jury found defendant guilty of murder, and defendant was sentenced to a 40-year term of imprisonment.  Defendant's posttrial motions were denied.  This appeal followed.

Defendant first contends that the trial court erred in admitting into evidence the prior testimony of a witness who did not appear to testify at the second trial.

Jemeil Amlet, who was an eyewitness to the shooting death of David Taylor and was also charged with armed robbery in connection with this case, testified at defendant's first trial.  Just as jury selection was to begin for the retrial, the State notified the court that Amlet had made representations that he would refuse to testify at the retrial.  The court issued a writ of body attachment and began jury selection.  The following day, Amlet, who was already under subpoena, voluntarily appeared before the court.  The following colloquy then took place:

"THE COURT: Mr. Amlet, I am glad you came in here this morning.  I issued a body attachment or a warrant.  They would of [
sic
] picked you up and threw [
sic
] you in jail.  Thank you for coming in today.  The State does intend to call you as a witness in the case.  Are you going to testify?

MR. AMLET:  No, sir.

THE COURT:  If you don't testify, then I am going to have find [
sic
] you in contempt and throw you in jail.

MR. AMLET:  I know.

***

I am willing to get locked up in order to look out for

the future, my family.  Whatever consequences you are going to give me.

THE COURT: I would suggest that you reconsider because when it comes time for you to testify if you refuse, the State will ask me to find you in contempt of court for not testifying.  If you continue to refuse to testify, I will have to take some action against you.  You understand that[,] I take it?

MR. AMLET: Yes, sir.

THE COURT: Okay.

MS. BRUNO [Assistant State's Attorney]: Judge, at this point we have to finish picking a jury.  Mr. Amlet is under subpoena.  I am going to ask the Court [
sic
] order that he remain in the courthouse and not leave until the time comes that we have to call him to testify.

THE COURT: You would be calling him this morning?

MS. BRUNO: That’s the intention since he is here, yes.

THE COURT: Stick around, sir.  Don't leave the courthouse.  You can leave the courtroom.  Don't leave the courthouse and we will cross the bridge when we get to it.  It doesn't seem like we are getting too far in crossing the bridge.  The court's hands are going to be kind of tied too to find you in contempt if you refuse not [
sic
] to testify. ***

THE CLERK: Withdraw the body attachment?

THE COURT: Yes."

Jury selection then continued.

Trial began that afternoon, but Amlet was not seen again after the lunch recess.  The following day, after Amlet failed to appear in court and the State could not locate him, the court granted the State's motion that the transcript of Amlet's testimony from the first trial be read to the jury.

Section 115--10.2 of the Code of Criminal Procedure of 1963 (Code) provides in relevant part:

"Admissibility of prior statements when witness refused to testify despite a court order to testify.

(a) A statement not specifically covered by any other hearsay exception but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule if the declarant is unavailable as defined in subsection (c) and if the court determines that:

(1) the statement is offered as evidence of a material fact; and

(2) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and 

(3) the general purposes of this Section and the interests of justice will best be served by admission of the statement into evidence. 

*** 

(c) Unavailability as a witness is limited to the situation in which the declarant persists in refusing to testify concerning the subject matter of the declarant's statement despite an order of the court to do so."  725 ILCS 5/115--10.2 (West 2000).

Generally, a trial court's rulings on evidentiary matters will not be reversed absent a clear abuse of the court's discretion.  
People v. Hall
, 195 Ill. 2d 1, 20 (2000).  However, where, as here, an evidentiary ruling involves a question of statutory interpretation, a reviewing court will give the ruling a 
de novo 
review.  See 
Hall
, 195 Ill. 2d at 21. 

Relying on 
People v. Drum
, 321 Ill. App. 3d 1005 (2001), defendant argues that Amlet was not "unavailable" pursuant to subsection (c) and, therefore, the transcript of Amlet’s testimony was admitted in error.  In 
Drum
, the State moved 
in limine
 to admit the hearsay testimony of two witnesses, based on the representations of the witnesses' attorneys that the witnesses intended not to testify if called.  The trial court denied the State's motions, finding that the witnesses' prior testimony lacked sufficient trustworthiness.  The State appealed that denial.  The Fourth District of the Appellate Court found that the issue was not ripe, holding that, under section 115-10.2, a declarant must persist in refusing to testify 
at trial
.  
Drum
, 321 Ill. App. 3d at 1010-11.  As the witnesses had not been placed on the witness stand and refused to testify after being ordered to do so, the court had erred in making a pretrial ruling on the admissibility of the statements.

Defendant argues that Amlet, like the witnesses in 
Drum
, did not persist in refusing to testify despite a court order to do so.  However, we find 
Drum
 to be distinguishable.  In 
Drum
, the trial court made its finding of unavailability based on vague representations of the witnesses' attorneys, including statements that there was " 'definitely some uncertainty' " as to one witness's position regarding testifying and that the other witness " 'does not know what he will be doing.' "  
Drum
, 321 Ill. App. 3d at 1011.  In the case before us, Amlet made manifest his refusal to testify.  He was subpoenaed, and the trial court issued a writ of body attachment to bring him to court.  Amlet appeared and unambiguously told the court that he was not going to testify and that he was willing to be incarcerated and accept the consequences for failing to testify.  The court clearly explained to Amlet what those consequences would be, then ordered Amlet to remain in the courthouse to testify.  The record reflects that Amlet left the courthouse after the court’s morning session, and the State was unable to locate him that afternoon or the following day.  Amlet could not have made his refusal to testify any less ambiguous than he did when he told the court that he would not testify and then left the courthouse, in violation of the court’s order and a subpoena, and failed to return.  This refusal was clearly evident and was made by Amlet on the day that he was to testify.  

The court in 
Drum
 noted that, even if the witnesses in that case had demonstrated "a 
present
 intent to disobey a court order to testify, *** a person's will to resist court orders often withers when sitting in the courtroom, facing an insistent judge and imminent contempt sanctions."  (Emphasis in original.)
  
Drum
, 321 Ill. App. 3d at 1011.  While the witnesses in 
Drum
 had not yet faced the insistent judge, Amlet stood before the trial court and made known his intentions and his willingness to accept the consequences.  We acknowledge that certain of the court’s statements to Amlet were prospective.  Nevertheless, we hold that, taken as a whole, the court's admonitions to Amlet constituted an order to testify and that Amlet's statements to the court, combined with his defiance of the court's order to remain in the courthouse to testify, constituted a refusal to testify for purposes of the Code.  To the extent that 
Drum
 holds that a witness must be on the witness stand before he can refuse to testify, we disagree with 
Drum
.  The plain language of the Code does not contain such a requirement.  When an enactment is clear and unambiguous, this court may not depart from the meaning of the plain language by reading into it exceptions, limitations, or conditions not expressed by the legislature.  
People v. Owens
, 323 Ill. App. 3d 222, 228 (2001).   We conclude that Amlet was unavailable under the definition contained in section 115--10.2 of the Code.  Since defendant does not argue that the testimony was otherwise inadmissable under section 115--10.2, we find no error in allowing the reading of Amlet's prior testimony to the jury.

Defendant next contends that there is "the possibility" that the court did not rely on section 115--10.2 when it admitted the transcript of Amlet's testimony.  According to defendant, the court suggested that it could admit Amlet's testimony as the statements of a deponent in a civil case without resorting to section 115--10.2.  Defendant argues that the court erred in admitting the testimony in this manner.  However, this court can affirm the trial court on any basis supported by the record.  
People v. Reed
, 298 Ill. App. 3d 285, 295 (1998).  Having found that the trial court properly admitted the transcript of Amlet's testimony pursuant to section 115--10.2, we need not address this alternative exception to the hearsay rule.

Defendant next contends that the trial court erred when it sustained the State's hearsay objections to questions asked of two witnesses.  We disagree.

The State presented the testimony of Jermaine Price, who was  with the victim, David Taylor, at a party in the apartment of Brandy Owen on the night that Taylor was killed.  Price testified that he saw two black males leave the party only to return a short time later with defendant.  Eventually, defendant pulled out a gun, fired several shots, and told the partygoers to empty their pockets.  The two black males, who were then brandishing knives, retrieved the money that the partygoers had placed on the floor and then left with defendant.  Taylor was shot moments later as he chased defendant and his accomplices.  Defendant was the only person that Price saw with a gun.  

On cross-examination, the State objected when Price was asked if he knew why the two black males left the party, if they "just decide[d] to get up and leave"  or said anything about a weapon to him.  Defendant argued that, at the first trial, Price had testified that one of the black males had said "that they had to go put up the heat, which he [Price] took to mean a gun."  The court concluded that the questions called for hearsay answers and sustained the State’s objections.  

Deon Tramble gave similar testimony at the second trial regarding the events leading up to the shooting of Taylor.  He stated that defendant was the only person he had seen with a gun that night.  On cross-examination, Tramble was asked if the two black males said anything about a gun.  The court sustained the State’s objection on hearsay grounds.

A trial court’s ruling on an evidentiary matter will not be reversed absent an abuse of the trial court's discretion.  
Hall
, 195 Ill. 2d at 20.  We find no such abuse here.  

 Hearsay evidence is an out-of-court statement that is offered to prove the truth of the matter asserted; such evidence is generally inadmissible unless it falls into a recognized exception.  
People v. Cloutier
, 178 Ill. 2d 141, 154 (1997).  Defendant argues that a statement by one of the black males that he had a gun that he intended to place outside was a statement of intent admissible to show that the person acted in conformity with the intent.
  Statements that indicate a declarant's state of mind are admissible as exceptions to the hearsay rule when the declarant is unavailable to testify and there is a reasonable probability that the proffered hearsay statement is truthful.  
People v. Floyd
, 103 Ill. 2d 541, 546 (1984).  However, to be admissible, the declarant's state of mind must be relevant to a material issue in the case.  
Floyd
, 103 Ill. 2d at 546; 
People v. Kinnett
, 287 Ill. App. 3d 709, 715 (1997).

Defendant’s argument herein fails on two counts.  First, the identity of the declarant was never established.  Even at the first trial, neither Price nor Tramble testified as to which of the two black males made the statement.  (Other testimony in the trial revealed that the two men were Keith Calvert and Jemeil Amlet.)  Defendant argues that the declarant was "apparently Calvert."  Assuming, 
arguendo
, that this is true, there is no evidence that Calvert was unavailable to testify.  Thus, the unavailability test is not met.  (We note that, in Illinois, there is a requirement that the declarant be unavailable in order for the declarant's statement to be admitted.  
Floyd
, 103 Ill. 2d at 546.  See also 
People v. Nyberg
, 275 Ill. App. 3d 570, 586 (1995) (Wolfson, J., specially concurring) (noting that the unavailability requirement is well settled in Illinois case law but is ill-advised); M. Graham, Cleary & Graham's Handbook of Illinois Evidence §803.4, at 712 (6th ed. 1994).  These sources question the requirement of unavailability and suggest that the requirement be abandoned; further, they urge that the reliability of the statement be considered in determining its admissibility, as under the Federal Rules of Evidence (see Fed. R. Evid. 803(3)).  Notwithstanding this negative commentary, we are bound to follow the rulings of our supreme court and, therefore, the proponent must demonstrate that the declarant is unavailable.  Even if we dispensed with the unavailability hurdle and proceeded to consider the reliability of the statement that Price and Tramble attribute to Calvert, that statement would be inadmissible.  There is nothing in the circumstances of the statement to suggest that it is trustworthy and that Calvert was truthful in proclaiming that he had a gun.  Calvert's statement becomes relevant and material only if it were truthful, 
i.e.
, if he actually had a gun.  As he could have been lying that he had a gun in order to impress the persons in Owen's apartment as easily as he could have been telling the truth, there is no reliability in Calvert's statement sufficient to justify its admission at trial.  Therefore, even were if we to consider this statement pursuant to the requirements of the Federal Rules of Evidence and Judge Wolfson's concurrence in 
Nyberg
, it would nevertheless be inadmissible.) 

Second, defendant has failed to demonstrate that the declarant's state of mind and his intent to act in conformity with it are relevant to a material issue in this case.  The only relevance such a statement could have would be to prove the truth of the matter asserted, 
i.e.
, that one of the two black males had a gun.  Thus, the possibility that one of the two black males had a gun is the only relevant issue here; defendant seeks to establish this fact through the declarant Calvert’s state of mind.  Using Calvert's hearsay statement to prove the truth of the matter asserted, that one of the two black males had a gun, improperly bootstraps the fact into evidence because the statement may not have been true.  Thus, the statement was clearly hearsay and did not fit into any recognized hearsay exception.  Therefore, the trial court did not err in sustaining the State's objections.

Defendant also argues that the State was able to mislead the jury when Price's and Tramble's testimony concerning the gun was precluded on grounds of hearsay.  Defendant contends that, in questioning Patricia Amann, one of the partygoers at Owen's apartment, as to whether she heard Amlet or Calvert talking about a gun, the State was able to give the jury the impression that neither man had a gun at any time.  Defendant's argument, however, fails because testimony concerning Calvert's possession of a gun was properly admitted through the testimony of Amlet.  Amlet's testimony from the first trial, properly admitted here by the trial court, revealed that Calvert announced to everyone in the apartment that he had a gun and was taking it outside because Owen did not want guns in her house when her children were present.  Thus, the jury learned that Calvert said he had a gun and that he placed it outside at some point before the crime occurred.  Any error, therefore, in excluding the testimony of Price and Tramble was harmless, as the jury had already learned the information that defendant hoped to elicit from Price and Tramble.  See 
People v. Nyberg
, 275 Ill. App. 3d at 581.

For these reasons, the judgment of the circuit court of Lake County is affirmed.

GEIGER and CALLUM, JJ., concur.