THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DARRELL B. CULBREATH, Defendant-Appellant.

Fourth District    No. 4—02—0163

Argued August 28, 2003.—Opinion filed October 29, 2003.

Michael J. Pelletier and Douglas R. Hoff (argued), both of State Appellate Defender's Office, of Chicago, for appellant.

William A. Yoder, State's Attorney, of Bloomington (Norbert J. Goetten,

Robert J. Biderman, and David E. Mannchen (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

In August 2001, a jury convicted defendant, Darrell B. Culbreath, of aggravated battery (720 ILCS 5/12—4(b)(1) (West Supp. 2001)). In November 2001, the trial court sentenced him to an extended term of six years in prison, based on a prior conviction (730 ILCS 5/5—5—3.2(b)(1) (West Supp. 2001); 730 ILCS 5/5—8—2(a) (West 2000)). The court also ordered that within two years of his release from prison, defendant pay $10,026.02 in restitution to the hospital that treated the victim.

Defendant appeals, arguing that (1) the trial court erred by (a) sustaining the State's objection to a question posed to defendant on redirect examination, (b) conducting *voir dire* of prospective jurors without a court reporter present, and (c) ordering that defendant pay $10,026.02 in restitution within two years of his release from prison; and (2) his extended-term sentence must be vacated. We affirm.

## I. BACKGROUND

In June 2001, the State charged defendant with two counts of aggravated battery, alleging that he (1) knowingly and without legal justification caused great bodily harm to Larry Lewis, in that he stabbed Lewis in the back and punctured his lung (count I), and (2) knowingly and without legal justification caused bodily harm to Lewis, in that he stabbed Lewis with a knife, a deadly weapon (count II). The State later dismissed count I.

In August 2001, on the first day of defendant's trial, the trial court asked the State and defense counsel if either party wanted a court reporter present to transcribe *voir dire* of prospective jurors. The State informed the court that it was not necessary for a court reporter to be present. Defense counsel responded as follows: "I would be willing to waive the presence of the [c]ourt [r]eporter with the understanding that the reporter is nearby in case we need to make a record of something." The court then excused the court reporter for *voir dire*. Court reporting resumed the next day for counsel's opening statements and the remainder of defendant's trial.

Because the parties are familiar with the evidence presented at defendant's trial, we discuss it only to the extent necessary to put defendant's arguments in context. Lewis testified that he was a tenant and assistant manager of a 12-unit apartment building in Bloomington. Around 8:30 a.m. on June 2, 2001, Lewis was cleaning a second-floor apartment when his cousin informed him that some people were making noise downstairs. Lewis went downstairs and encountered

defendant and defendant's girlfriend, Eartha West. He told defendant and West to quiet down and then went back upstairs. Around 11:30 a.m., defendant came upstairs and began knocking on an apartment door. When Lewis asked defendant to stop, defendant responded that defendant could go anywhere he wanted. Defendant then stepped toward Lewis, and the men began fighting. Lewis knocked defendant to the floor, and a steak knife fell out of defendant's back pocket. Lewis picked up the knife, put it in his pocket, and told defendant to leave the apartment building. Defendant refused, and instead, entered an apartment occupied by Jack Duncan. Lewis followed defendant and once again told him to leave. Defendant said that he was trying to find West. Lewis told defendant if he left the building, Lewis would find West and send her outside. Defendant then went outside.

A few minutes later, Lewis went outside and told defendant that West did not want to see him. Lewis then returned defendant's knife and told him to leave the premises. Lewis went back upstairs. A couple of minutes later, defendant reentered the apartment building and said he needed to talk to West. Lewis once again told defendant to leave and followed him outside. Once outside, Lewis noticed that defendant had put a beer bottle on the grass. When Lewis bent down to pick up the bottle and throw it away, defendant stabbed him in his right shoulder. Lewis turned toward defendant, who was still holding the knife. Defendant said, "I told you that I was going to get you." Lewis, who was weak and having difficulty breathing, was taken to BroMenn Hospital, where he was hospitalized for one week.

Bloomington police detective Tim McCoy testified that during a June 5, 2001, interview of defendant, defendant stated that on the morning of June 2, 2001, he went to the apartment building. He walked upstairs and knocked on a friend's apartment door. As he was doing so, Lewis hit him in the face. Defendant then left the building. Defendant initially denied knowing anything about the stabbing. However, after further questioning, defendant told McCoy that after Lewis hit him, the struggle continued when defendant retreated outside, and defendant stabbed Lewis during that struggle. McCoy told defendant that McCoy did not believe his story. Defendant then said that after he and Lewis went outside, Lewis reached for a 40-ounce beer bottle that was on the ground. Defendant then stabbed Lewis because he thought Lewis was going to hit him with the bottle. After the stabbing, defendant left and later threw the knife down a sewer. Defendant also told McCoy that he had been drinking beer and using drugs the night before and the morning of the incident.

Defendant testified on his own behalf that on the morning of the incident, he went to the apartment building to visit a friend. Once

there, he saw West on the porch, and they began arguing. Defendant then tried to visit his friend, who was unavailable. He went upstairs to visit Duncan and wait for his ride home. When defendant saw West, who was still angry, he decided to visit another friend who lived next door to Lewis. After he knocked on that friend's door, Lewis came into the hallway and told him to stop knocking on the door. Before defendant could walk away, Lewis hit him in the face, knocking him down. Defendant was shaking as he scooted away from Lewis, who was standing over him with clenched fists. Defendant told Lewis that defendant did not want any trouble, and defendant walked outside. Lewis followed defendant outside, tossed the knife (which defendant initially denied but ultimately acknowledged had fallen out of his pocket in the hallway) toward defendant, and picked up a 40-ounce beer bottle. Defendant, who was dazed and scared, thought Lewis was going to hit him with the bottle. As Lewis was "coming up" with the bottle in his hand, defendant grabbed the knife and stabbed him. Defendant acknowledged that when he stabbed Lewis, Lewis had not turned around and faced him.

On redirect examination, defendant testified that when Lewis was in the process of standing up with the bottle in his hand, defendant was scared. Defense counsel then asked the following question: "Did you fear that you were going to receive great bodily harm?" Defendant answered, "Yes, I did." At that point, the State objected on the grounds that the question was cumulative and beyond the questioning on cross-examination. The trial court sustained the State's objection, and defense counsel ended his redirect examination.

On rebuttal, Lewis testified that the beer bottle was still on the ground when defendant stabbed him.

Based on this evidence, the jury convicted defendant of aggravated battery, and the trial court sentenced him as stated. Defendant later filed a motion to reconsider his sentence, which the trial court denied. This appeal followed.

## II. ANALYSIS

### A. The Trial Court's Ruling on the State's Objection to the Question Regarding Defendant's Fear of Receiving Great Bodily Harm

Defendant first argues that the trial court erred by sustaining the State's objection to the following question posed to defendant on redirect examination: "Did you fear that you were going to receive great bodily harm?" Specifically, he contends that by sustaining the objection, the court improperly precluded him from presenting evidence regarding his state of mind at the time of the offense. We disagree.

■ The admissibility of evidence lies within the trial court's sound discretion, and this court will not substitute its judgment for that of the trial court absent a clear abuse of discretion. *People v. Cookson*, 335 Ill. App. 3d 786, 793, 780 N.E.2d 807, 812 (2002).

■ In this case, after defense counsel asked defendant on redirect examination if he feared that he was going to receive great bodily harm, defendant answered, "Yes, I did." The State objected on the grounds that the question was cumulative and beyond the questioning of cross-examination, and the trial court sustained the State's objection.

We agree with the trial court that the question at issue and defendant's affirmative answer were largely cumulative of other testimony presented at defendant's trial. In particular, during his interview with McCoy, defendant stated that he stabbed Lewis because he thought Lewis was going to hit him with the beer bottle. In addition, defendant testified on direct examination that (1) he stabbed Lewis because he was afraid Lewis was going to hit him with the bottle; and (2) when he stabbed Lewis, he was dazed and scared. Further, on redirect examination, defendant testified that he was scared when Lewis picked up the bottle. Thus, defendant's state of mind at the time of the stabbing was already before the jury when defense counsel asked defendant if he feared great bodily harm. Accordingly, we conclude that the court did not abuse its discretion by sustaining the State's objection to that question. See *Dillon v. Evanston Hospital*, 199 Ill. 2d 483, 495, 771 N.E.2d 357, 365 (2002) ("the exclusion of cumulative evidence is within the discretion of the trial court, whose ruling will not be reversed absent a clear abuse of that discretion").

In addition, although not raised by the State below or relied on by the trial court, we may affirm the court's ruling on the ground that defense counsel's question was leading and thus improper as to form. See *People v. Wilson*, 331 Ill. App. 3d 434, 439, 771 N.E.2d 996, 1000 (2002) (a reviewing court may affirm the trial court on any basis supported by the record). Generally, it is improper for counsel to ask a leading question of his own witness. M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 611.9, at 505 (7th ed. 1999); see also *People v. Bunning*, 298 Ill. App. 3d 725, 732, 700 N.E.2d 716, 722 (1998) ("To be incompetent, a leading question must relate to material matters and occur when there is no apparent necessity for it"). In this case, the question related to a material issue, and no apparent necessity required defense counsel to ask the leading question. Instead, defense counsel could have asked defendant either what he was thinking at the time of the stabbing or why he stabbed Lewis.

Moreover, although neither party discusses it, we note that (1) the State objected *after* defendant answered the question in the affirmative; and (2) the State never asked the trial court to strike defendant's answer and instruct the jury to disregard it. Thus, defendant's answer (that at the time of the stabbing, he feared he was going to receive great bodily harm) remained before the jury. Accordingly, we disagree with defendant's contention that he was prejudiced by the court's sustaining the State's objection to the question.

## B. Excusal of Court Reporting for *Voir Dire*

Defendant next argues that (1) the trial court violated his right to due process by conducting *voir dire* of prospective jurors without a court reporter present to transcribe the proceedings, as required by Supreme Court Rule 608(a)(9) (177 Ill. 2d R. 608(a)(9)); (2) the failure to have a court reporter present to transcribe *voir dire* resulted in the denial of his right to effective assistance of appellate counsel; and (3) his trial counsel did not have the authority to waive the court reporter's presence at *voir dire* because that decision belonged to defendant alone. We disagree.

### 1. *Due Process*

Defendant first contends that the trial court violated his right to due process when it conducted *voir dire* of prospective jurors without a court reporter present to transcribe the proceedings. We disagree.

■ Supreme Court Rule 608(a)(9) provides that in cases in which the death penalty is not imposed, "the court reporter shall take full stenographic notes of the proceedings regarding the selection of the jury, but the notes need not be transcribed unless a party designates that such proceedings be included in the record on appeal." 177 Ill. 2d R. 608(a)(9).

■ A trial court's failure to provide a court reporter during *voir dire* does not deprive a defendant of due process. *People v. Morris*, 229 Ill. App. 3d 144, 156, 593 N.E.2d 932, 940 (1992); see also *People v. McClurg*, 195 Ill. App. 3d 381, 388, 552 N.E.2d 290, 294 (1990). We thus reject defendant's contention that he was denied due process due to the absence of a court reporter. In so doing, we note that where a defendant—as here—makes no claim of error in the jury selection process but, instead, merely complains that a sufficient record of the proceedings was not created, the lack of such a record deprives him of nothing. See generally *People v. Hopping*, 60 Ill. 2d 246, 250-53, 326 N.E.2d 395, 398-99 (1975) (in which the supreme court held that (1) the verbatim transcript requirement of Supreme Court Rule 401(b) (50 Ill. 2d R. 401(b)) is not a constitutional requirement; and (2) the constitution requires only that a record be made that is of sufficient

completeness to permit proper consideration of the specific claims made by the defendant on appeal).

### 2. Defendant's Right to Effective Assistance of Appellate Counsel

■ Defendant also contends that the failure to have a court reporter present to transcribe *voir dire* resulted in the denial of his right to effective assistance of appellate counsel. He essentially claims that without a transcript of the proceedings, his ability to appeal the jury selection process has been foreclosed. We disagree.

In *People v. DeRossett*, 237 Ill. App. 3d 315, 333, 604 N.E.2d 500, 512 (1992), this court rejected the same argument, stating as follows:

> "Defendant does not indicate by reference to the record how *voir dire* was flawed. Where no verbatim transcript is available to indicate an alleged error, the Illinois Supreme Court rules provide alternative methods for preserving the record. (134 Ill. 2d Rules 323(c), (d).) Defendant failed to submit a bystander's report or an agreed statement of facts. Defendant has waived any alleged error regarding the propriety of the trial judge's rulings during *voir dire*."

See also *Morris*, 229 Ill. App. 3d at 156, 593 N.E.2d at 940 (rejecting the defendant's claim that the failure to provide a court reporter during *voir dire* rendered him unable to raise any objections to the proceedings; reasoning that "the infirmity of which the defendant complains has resulted because defendant has not obtained a bystander's report or an agreed statement of facts").

Similarly, in this case, defendant has filed neither a bystander's report nor an agreed statement of facts, as permitted by Supreme Court Rules 323(c) and (d). 166 Ill. 2d Rs. 323(c), (d); see also 177 Ill. 2d R. 612(c) (which provides that Rules 323(c) and (d) apply in criminal appeals). Accordingly, defendant cannot now argue that the trial court's failure to provide a court reporter for *voir dire* constituted error requiring reversal. We recognize that the lack of a transcript of *voir dire* might render appellate counsel's job more difficult. However, contrary to defendant's assertion, we conclude that creating a bystander's report would not be impossible. Indeed, defendant makes no claim that he attempted to create a bystander's report but was unable to do so.

### 3. Defendant's Claim That Trial Counsel Lacked Authority To Waive the Court Reporter's Presence at Voir Dire

Last, defendant contends that his trial counsel did not have authority to waive the court reporter's presence during *voir dire* because that decision belonged to defendant alone. We disagree.

■ Resolution of this issue requires examination of the role played

by defense counsel and the extent to which a defendant must personally be involved in decisions affecting his defense and trial. In *People v. Ramey*, 152 Ill. 2d 41, 54, 604 N.E.2d 275, 281 (1992), the supreme court discussed four decisions that are ultimately for a criminal defendant to personally make after consulting with his attorney: (1) what plea to enter; (2) whether to waive a jury trial; (3) whether to testify in his own behalf; and (4) whether to appeal. The supreme court discussed those decisions in the context of the defense counsel's authority and wrote as follows:

"Beyond these four decisions, however, trial counsel has the right to make the ultimate decision with respect to matters of tactics and strategy after consulting with his client. Such matters include what witnesses to call, whether and how to conduct cross-examination, what jurors to accept or strike[,] and what trial motions should be made." *Ramey*, 152 Ill. 2d at 54, 604 N.E.2d at 281.

At issue in *Ramey*, a capital murder case, was the defendant's claim that he was denied his constitutional rights to due process and effective assistance of counsel when his trial counsel presented a defense of self-defense against defendant's wishes. The supreme court rejected that argument, concluding that defense counsel's assertion of self-defense did not deny defendant due process. *Ramey*, 152 Ill. 2d at 54, 604 N.E.2d at 281.

A few years after *Ramey*, in *People v. Brocksmith*, 162 Ill. 2d 224, 229-30, 642 N.E.2d 1230, 1233 (1994), the supreme court added a fifth decision to the list of those which a criminal defendant must personally make. In that case, the supreme court concluded that a defendant in a criminal case, not his counsel, must make the ultimate decision whether to tender an included-offense instruction to the trial court with the request that the jury be so instructed. The court explained:

"Because it is defendant's decision whether to initially plead guilty to a lesser charge, it should also be defendant's decision to submit an instruction on a lesser charge at the conclusion of the evidence. In both instances the decisions directly relate to the potential loss of liberty on an initially uncharged offense." *Brocksmith*, 162 Ill. 2d at 229, 642 N.E.2d at 1232.

In accordance with the supreme court's holdings in *Ramey* and *Brocksmith*, we hold that in a criminal case, the decision whether to waive a court reporter's presence during *voir dire* remains with defense counsel, not the defendant. In so holding, we reaffirm this court's decision in *People v. Pondexter*, 214 Ill. App. 3d 79, 87, 573 N.E.2d 339, 345 (1991), in which we explained as follows:

"An accused has either the right to have counsel represent him or the right to represent himself; however, a defendant has no right

to both self-representation and the assistance of counsel. An election between these two rights must be made at the proper time and in the proper manner. ***

Once this election is made, the roles of attorney and client are defined. Defendant retains the right to make decisions involving 'fundamental rights,' while those strategic matters involving 'the superior ability of counsel' are left to the attorney." *Pondexter*, 214 Ill. App. 3d at 87, 573 N.E.2d at 345.

In so holding, we reject defendant's claim that defense counsel's waiver of the court reporter's presence during *voir dire* creates an inherent conflict of interest because the waiver prevents the defendant from raising claims against his counsel. Such a waiver does not preclude a defendant from challenging his trial counsel's actions during *voir dire*. As stated above, defendant may file either a bystander's report or an agreed statement of facts in such a situation.

Although we have concluded that the trial court's seeking of, and defense counsel's agreement to, a waiver of the court reporter's presence does not require reversal, we note that Supreme Court Rule 608(a)(9) mandates that a court reporter be present during *voir dire*. See *Medow v. Flavin*, 336 Ill. App. 3d 20, 36, 782 N.E.2d 733, 746-47 (2002) ("The supreme court rules are not merely suggestions to be complied with if convenient but rather obligations which the parties and the courts are required to follow"). Given the supreme court's mandate and in light of the potential difficulty in creating a bystander's report of such proceedings, the trial court should not seek waivers of the court reporter's presence.

## C. The Restitution Order

■ Defendant next argues that the trial court erred by ordering him to pay $10,026.02 in restitution within two years of his release from prison. Specifically, he contends that the restitution order was "patently at odds with the purpose and the spirit of the law authorizing restitution" because he will not be financially able to pay the amount ordered within two years of his prison release. We disagree.

Initially, we note that defendant forfeited this issue on appeal by failing to (1) object to the restitution order at sentencing, and (2) raise the issue in his motion to reconsider sentence. *People v. Greco*, 336 Ill. App. 3d 253, 259, 783 N.E.2d 201, 206 (2003).

Even assuming that defendant had not forfeited this issue, we reject his challenge to the restitution order on the merits. In *People v. Mitchell*, 241 Ill. App. 3d 1094, 1097, 610 N.E.2d 794, 796 (1993), the defendant argued that this court should vacate his restitution order because it was meaningless due to his lack of assets and inability to comply with the order. We rejected the defendant's argument, stating, in pertinent part, as follows:

"We conclude the trial court has the authority to order restitution as a part of the sentence, regardless of the term of the incarceration and defendant's financial resources. The fact that it may never be collectible is of no importance. \*\*\*

\*\*\* No one can say with certainty what the future holds, and even though in a case like the present one, it appears *unlikely* that defendant will be able to comply with the restitution order, no one can say his compliance is *impossible*.

An incarcerated convict could obtain funds to pay a restitution order through inheritance, winning the lottery, or perhaps because of some cause of action that might arise as a result of his imprisonment." (Emphases in original.) *Mitchell*, 241 Ill. App. 3d at 1098-99, 610 N.E.2d at 797-98.

Defendant here presents essentially the same argument as did the defendant in *Mitchell* but provides us with no compelling reason for departing from our holding in that case. We thus reaffirm our holding in *Mitchell* and conclude that the trial court's restitution order was proper.

### D. Defendant's Extended-Term Sentence

Last, defendant argues that this court must vacate his six-year extended-term sentence because (1) the extended-term sentencing provision set forth in section 5—5—3.2(b)(1) of the Unified Code of Corrections (Unified Code) (730 ILCS 5/5—5—3.2(b)(1) (West Supp. 2001)) is unconstitutional, pursuant to *Apprendi v. New Jersey*, 530 U.S. 466, 490, 147 L. Ed. 2d 435, 455, 120 S. Ct. 2348, 2362-63 (2000); and (2) the State failed to prove to the jury his prior conviction beyond a reasonable doubt under section 5—8—2(a) of the Unified Code (730 ILCS 5/5—8—2(a) (West 2000)). We disagree.

### 1. Apprendi

In *People v. Dillard*, 319 Ill. App. 3d 102, 109, 745 N.E.2d 185, 191 (2001), we addressed and rejected a defendant's argument that the extended-term sentencing provision set forth in section 5—5—3.2(b)(1) of the Unified Code (730 ILCS 5/5—5—3.2(b)(1) (West 2000)) is unconstitutional under *Apprendi*, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2362-63. We adhere to our holding in *Dillard* and thus reject defendant's contention that *Apprendi* renders section 5—5—3.2(b)(1) of the Unified Code unconstitutional.

### 2. Section 5—8—2(a) of the Unified Code

Defendant also contends that the State failed to prove to the jury his prior conviction beyond a reasonable doubt, which, according to defendant, the State was required to do under section 5—8—2(a) of the Unified Code (730 ILCS 5/5—8—2(a) (West 2000)). We disagree.

■ The primary objective of this court in construing the meaning of a statute is to ascertain and give effect to the legislature's intention. All other rules are subordinate to this cardinal principle. *In re Detention of Lieberman*, 201 Ill. 2d 300, 307, 776 N.E.2d 218, 223 (2002). Examining the language of the statute is "the most reliable indicator of the legislature's objectives in enacting a particular law." *Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 504, 732 N.E.2d 528, 535 (2000). Nonetheless, in determining the legislature's intent, the court may properly consider not only the language of the statute, but also the reason and necessity for the law, the evils sought to be remedied, and the purpose to be achieved. *People v. Pullen*, 192 Ill. 2d 36, 42, 733 N.E.2d 1235, 1238 (2000); see *Fumarolo v. Chicago Board of Education*, 142 Ill. 2d 54, 96, 566 N.E.2d 1283, 1302 (1990) ("Legislative intent can be ascertained from a consideration of the entire Act, its nature, its object[,] and the consequences that would result from construing it one way or the other"). In construing a statute, we also presume that in enacting the legislation, the General Assembly did not intend absurdity, inconvenience, or injustice. *Lieberman*, 201 Ill. 2d at 309, 776 N.E.2d at 224. Indeed, " '[w]here the spirit and intent of the General Assembly in adopting an act are clearly expressed and its objects and purposes are clearly set forth, courts are not bound by the literal language of a particular clause which would defeat the obvious intent of the legislature.' " *People v. McCoy*, 63 Ill. 2d 40, 45, 344 N.E.2d 436, 439 (1976), quoting *Continental Illinois National Bank & Trust Co. v. Illinois State Toll Highway Comm'n*, 42 Ill. 2d 385, 395, 251 N.E.2d 253, 259 (1969).

At the time of defendant's trial and sentencing, section 5—8—2(a) of the Unified Code provided, in pertinent part, as follows:

"A judge shall not sentence an offender to a term of imprisonment in excess of the maximum sentence authorized by [s]ection 5—8—1 for the class of the most serious offense of which the offender was convicted unless the factors in aggravation set forth in paragraph (b) of [s]ection 5—5—3.2 were found to be present. *Where a trier of fact finds beyond a reasonable doubt that such factors were present*, the judge may sentence an offender to the following:

\* \* \*

(5) for a Class 3 felony, a term shall not be less than 5 years and not more than 10 years[.]" (Emphasis added.) 730 ILCS 5/5—8—2(a)(5) (West 2000).

Section 5—5—3.2(b)(1) of the Unified Code, in turn, sets forth prior convictions of the same class or greater class felony as one of the ag-

gravating factors that may be considered in sentencing a defendant to an extended prison term. 730 ILCS 5/5—5—3.2(b)(1) (West Supp. 2001).

In determining whether the State was required to prove to the jury beyond a reasonable doubt defendant's prior conviction, we must discern the legislature's intent in amending section 5—8—2(a) to provide that a trier of fact must find section 5—5—3.2 aggravating factors beyond a reasonable doubt before a trial court may sentence a defendant to an extended term. (Prior to the amendment, section 5—8—2(a) provided that the trial court should decide whether aggravating factors were present. See Pub. Act 91—953, § 10, eff. February 23, 2001 (2000 Ill. Laws 2262, 2272) (amending 730 ILCS 5/5—8—2(a)).)

Defendant concedes that the legislature amended section 5—8—2(a) of the Unified Code for the sole purpose of bringing the statute in line with the United States Supreme Court's decision in *Apprendi*. See 91st Ill. Gen. Assem., House Proceedings, January 9, 2001, at 7 (statements of Representative Durkin) (explaining that the suggested amendment "was brought by the State's Attorney Association in response to a United States Supreme Court decision this past summer [in *Apprendi*]"). In *Apprendi*, the United States Supreme Court held that " 'under the [d]ue [p]rocess [c]lause of the [f]ifth [a]mendment and the notice and jury trial guarantees of the [s]ixth [a]mendment, any fact (*other than prior conviction*) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt.' " (Emphasis added.) *Apprendi*, 530 U.S. at 476, 147 L. Ed. 2d at 446, 120 S. Ct. at 2355, quoting *Jones v. United States*, 526 U.S. 227, 243 n.6, 143 L. Ed. 2d 311, 326 n.6, 119 S. Ct. 1215, 1224 n.6 (1999). Prior to the legislature's amending section 5—8—2(a) of the Unified Code, the appellate court had issued several decisions holding that *Apprendi* exempts recidivist statutes. See, *e.g.*, *People v. Roberts*, 318 Ill. App. 3d 719, 729, 743 N.E.2d 1025, 1033 (2000) (rejecting the defendant's claim that *Apprendi* renders recidivist provisions unconstitutional); *People v. Ramos*, 318 Ill. App. 3d 181, 193, 742 N.E.2d 763, 774 (2000) (holding that *Apprendi* clearly exempts recidivist statutes); *People v. Lathon*, 317 Ill. App. 3d 573, 584, 740 N.E.2d 377, 385 (2000) (noting that *Apprendi* recognized that prior convictions are an exception to the general rule that facts which increase a sentence beyond the statutory maximum must be submitted to a jury and proved beyond a reasonable doubt). Because the legislature is presumed to be aware of judicial decisions interpreting statutes (*Thurman v. Grinnell Mutual Reinsurance Co.*, 327 Ill. App. 3d 920, 928, 764 N.E.2d 130, 137 (2002)), we presume

that the legislature was aware of the appellate court decisions discussing *Apprendi* when it amended section 5—8—2(a) of the Unified Code. Indeed, when the legislature amended section 111—3 of the Code of Criminal Procedure of 1963 (725 ILCS 5/111—3 (West 2000)) (Criminal Code) by adding subsection (c—5) (see Pub. Act 91—953, § 5, eff. February 23, 2001 (2000 Ill. Laws 2262, 2262) (which both amended section 5—8—2(a) of the Unified Code and added section 111—3(c—5) of the Criminal Code)), the legislature explicitly exempted prior convictions. In that regard, section 111—3(c—5) provides, in pertinent part, as follows:

> "Notwithstanding any other provision of law, in all cases in which the imposition of the death penalty is not a possibility, if an alleged fact (*other than the fact of a prior conviction*) is not an element of an offense but is sought to be used to increase the range of penalties for the offense beyond the statutory maximum that could otherwise be imposed for the offense, the alleged fact must be included in the charging instrument or otherwise provided to the defendant through a written notification before trial, submitted to a trier of fact as an aggravating factor, and proved beyond a reasonable doubt." (Emphasis added.) 725 ILCS 5/111—3(c—5) (West 2000).

In light of (1) the clearly expressed intent of the legislature in amending section 5—8—2(a) of the Unified Code and (2) our presumption that the legislature was aware of the appellate court decisions discussing *Apprendi*, we conclude that the legislature did not intend to require the State to prove to the jury beyond a reasonable doubt a defendant's prior convictions. Instead, we believe the legislature's inclusion of prior convictions in section 5—8—2(a) was purely inadvertent and constituted a situation "where a legislative intention, otherwise clear, was in part mistakenly or inaccurately stated." *Gill v. Miller*, 94 Ill. 2d 52, 58, 445 N.E.2d 330, 333-34 (1983). "[C]ourts must construe the acts to reflect the obvious intent of the legislature even if the words of a particular section must be read as modified or altered so as to comport with the legislative intent." *People ex rel. Cason v. Ring*, 41 Ill. 2d 305, 313, 242 N.E.2d 267, 272 (1968). In so concluding, we recognize that "this technique of construction is to be exercised with caution" (*Gill*, 94 Ill. 2d at 58, 445 N.E.2d at 334), and its application is limited to exceptional situations where—as here— "adherence to the literal language of the statute would produce a result that is clearly and demonstrably at odds with the intent of the General Assembly" (*Lieberman*, 201 Ill. 2d at 320, 776 N.E.2d at 230).

Our conclusion that the legislature did not intend to require the State to prove to the jury beyond a reasonable doubt a defendant's

prior convictions is further supported by the legislature's later amendment of section 5—8—2(a) of the Unified Code. See *Lieberman*, 201 Ill. 2d at 320-21, 776 N.E.2d at 230 (a later amendment to a statute may be an appropriate source for discerning legislative intent). In Public Act 92—591, effective June 27, 2002, the General Assembly amended section 5—8—2(a) of the Unified Code by (1) deleting the phrase, "Where a trier of fact finds beyond a reasonable doubt that such factors were present," and (2) substituting the phrase, "If the pre[ ]trial and trial proceedings were conducted in compliance with subsection (c—5) of [s]ection 111—3 of the [Criminal Code]." See Pub. Act, 92—591, § 5, eff. June 27, 2002 (2002 Ill. Legis. Serv. 1269, 1270) (amending 730 ILCS 5/5—8—2(a) (West 2000)). As stated above, section 111—3(c—5) explicitly provides that the fact of a prior conviction need not be submitted or proved to a jury beyond a reasonable doubt, thus recognizing the exception to the general rule set forth in *Apprendi*. The legislative debate regarding House Bill 4194 (which became Public Act 92—591) reveals that the legislature's intent in amending section 5—8—2(a) was to "clarify[ ] it to come into compliance with the *Apprendi* decision" because the then-existing statute (as amended by Public Act 91—953) could be (1) viewed as "ambiguous," and (2) construed as requiring the fact of a prior conviction to be proved beyond a reasonable doubt. 92nd Ill. Gen. Assem., House Proceedings, April 2, 2002, at 99 (statements of Representative Johnson). Under these circumstances, we conclude that the legislature intended the later amendment to section 5—8—2(a) as a clarification of its original intent to exempt prior convictions.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

MYERSCOUGH, P.J., and KNECHT, J., concur.